UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAISON KITSUNE, INC.,

               Plaintiff,

      -against-

VINOD KASTURI,

               Defendant.

VINOD KASTURI,

               Counterclaimant and
               Third-Party Plaintiff,

      -against-

MAISON KITSUNE, INC., and KITSUN
E CREATIVE SAS,

               Counterclaim and Third-
               Party Defendants.

Case No. 1:24-cv-04431-ALC

## MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF/COUNTER-DEFENDANT MAISON KITSUNE, INC'S MOTION TO DISMISS COUNTERCLAIMS

Randi Kochman, Esq.
Cameron Welch, Esq.
Arielle H. Wasserman, Esq.
COLE SCHOTZ P.C.
1325 Avenue of the Americas
Suite 1900
New York, NY 10019
 (212) 752-8000

*Counsel for Counterclaim and Third-Party Plaintiff Vinod Kasturi*

68201/0001-48749918

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 4

LEGAL ARGUMENT ...................................................................................................... 4

    I.    THIS COURT SHOULD MAINTAIN AND EXERICSE ITS
        JURISDICTION ................................................................................................ 4

        A.    The Similarities Between the Parties and Claims Asserted in the
              French Action Only Further Demonstrate Why This Court Should
              Retain Jurisdiction ................................................................................ 7

        B.    Judicial Economy Favors Retaining Jurisdiction.................................... 10

        C.    Kitsune Parent's Improper, Anticipatory French Declaratory
              Judgment Action is No Basis for this Court to Relinquish its
              Jurisdiction .............................................................................................. 12

        D.    This Court is the Most Adequate Forum to Determine the Rights
              and Obligations Arising Under an American Employment
              Relationship ............................................................................................ 14

        E.    The Southern District is Significantly More Convenient than the
              Commercial Court of Paris ...................................................................... 16

        F.    Kitsune America's Misleading Arguments Regarding its Lack of
              Involvement and Substantial Prejudice Do Not Support Dismissal
              or a Stay of this Action .......................................................................... 18

68201/0001-48749918

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*3D/Int'l, Inc. v. Romano*,
811 F. App'x 244 (5th Cir. 2020)...............................................................................................6

*In re: Atari, Inc.*,
2016 WL 1618346 (S.D.N.Y. April 20, 2016) ........................................................................15

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
837 F.2d 33 (2d Cir.1987)....................................................................................................4, 5

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)...................................................................................................................5

*Dailey v. Transitron Elec. Corp.*,
475 F.2d 12 (5th Cir. 1973) ......................................................................................................6

*Funicular Funds, LP v. Pioneer Merger Corp.*,
700 F. Supp. 3d 49 (S.D.N.Y. 2023)..........................................................................................6

*Keswani v. Sovereign Jewelry Inc.*,
2021 WL 4461332 (S.D.N.Y. Sept. 29, 2021).........................................................................10

*Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*,
2013 WL 2531277 (S.D.N.Y. June 10, 2013) ...........................................................................4

*Oleg Cassini, Inc. v. Serta, Inc.*,
2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) .....................................................................12, 13

*Pippins v. KPMG LLP*,
2011 WL 1143010 (S.D.N.Y. Mar. 21, 2011) .........................................................................13

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
466 F.3d 88 (2d Cir. 2006).................................................................................................1, 3, 5

*Sarracco v. Ocwen Loan Servicing, LLC*,
220 F. Supp. 3d 346 (E.D.N.Y. 2016) .....................................................................................17

*In re Solutia, Inc.*,
653 B.R. 99 (Bankr. S.D.N.Y. 2023)........................................................................................15

*Stroyek v. Wal-Mart Stores, Inc.*,
2018 WL 3361057 (E.D. Pa. July 10, 2018)............................................................................17

68201/0001-48749918

*Sund v. Marriott Int'l, Inc.*,
    2020 WL 2085469 (D. Md. Apr. 30, 2020) ......................................................................16, 17

68201/0001-48749918

## PRELIMINARY STATEMENT

Plaintiff, Maison Kitsune Inc. ("Kitsune America"), improperly asks this Court to surrender its jurisdiction over a portion of this New York employment dispute in favor of piecemeal litigation of intrinsically intertwined claims on two different continents. Kitsune America's motion should be denied because *all* claims directly relate to, and arise from, a New York employment relationship and are properly before, and should be adjudicated by, this Court.

Defendant/Counterclaimant, Vinod Kasturi ("Kasturi"), is an American citizen who lived and worked in New York City for the majority of the events giving rise to this action. He never lived or worked in France. Kasturi entered into an employment agreement with Kitsune America, a corporation formed and existing under the laws of the State of New York and headquartered in New York City. To induce Kasturi to leave his existing New York employer and become its CEO, Kitsune America agreed to provide Kasturi with a minority equity interest in its sole shareholder and corporate parent, third-party defendant, Kitsune Creative SAS ("Kitsune Parent") (together with Kitsune America as the "Kitsune Parties"). Kitsune America then sent Kasturi a proposed employment agreement detailing the rights, obligations and benefits of his employment, which agreement expressly provided for the equity grant in Kitsune Parent as part of Kasturi's executive compensation. Section 1 of that agreement confirms this was a New York employment relationship, stating as follows:

> 1.     Employment. Company hereby agrees to employ Executive in New York City, its principal place of business, and Executive hereby accepts such employment and agrees to perform his duties in accordance with the terms and conditions set forth in this Agreement.

That same employment agreement provides that New York law was to govern, and that courts located in New York were the exclusive forum for disputes between the parties.

Kasturi accepted employment with Kitsune America and began to work for this New York corporation out of its New York City headquarters.  And while the employment agreement Kitsune America originally presented continued to be negotiated and was never signed, later iterations also provided for the application of New York law and venue in New York courts.  Why?  Because no other result was logical.  All parties clearly recognized theirs was a New York employment relationship having nothing to do with French law or the French courts.

Now that the parties' relationship has broken down, however, the Kitsune Parties – corporations with, based on their own press releases, over $200 million in annual revenue – have resorted to procedural gamesmanship to make litigation as onerous and costly as possible for Kasturi, an individual who was paid roughly 0.075% of that amount in annual compensation during his employment.  What better way to gain an advantage from the economic disparity between the parties than by making the former employee litigate on two different continents.

The Kitsune Parties seized on that opportunity when, in the context of settlement discussions, Kasturi's then-counsel sent the Kitsune Parties a draft complaint, to be filed with this Court, asserting damage claims relating to his employment, namely: (i) Kasturi's wrongful termination (he was terminated the day before he was to receive a retention bonus for staying on to aid with transition following his resignation months earlier); (ii) unpaid wages and bonuses Kitsune America simply never paid; and (iii) the value of the equity grant Kitsune America had agreed to, but never issued.[1]  Upon receipt of the draft complaint the Kitsune Parties embarked on the proverbial "race to the courthouse", commencing an improper anticipatory declaratory

---

[1] Significantly, Kasturi is **not** seeking to be declared an equity owner in this litigation – he is seeking money damages as compensation for the value of what he was supposed to, but never, received.  Yet another reason adjudication of this claim before the French Court is improper – the claim does not actually require adjudication of whether Kasturi **is** an owner of a French company.

2

judgment action before the Commercial Court of Paris seeking interpretation of *the terms of Kasturi's New York employment* with Kitsune America (referred to as "MK Inc." in that action), including the import of the draft New York employment agreement, and the issuance of a declaration that there was never a meeting of the minds as to Kasturi's equity grant (the "French Action"). The Complaint filed in the French Action actually admits it is a preemptive filing as it specifically references Kasturi's draft New York complaint and the "threat" that litigation in the United States would pose to the Kitsune Parties.

Notwithstanding the perceived "threat" posed by New York litigation, Kitsune America then commenced this action accusing Kasturi of allegedly misappropriating corporate assets – namely having the company pay alleged "personal legal bills." What Kitsune America omits from its Complaint in this action, however, is that those legal bills are for services performed, *at the direction of the Kitsune Parties*, *to document the terms of Kasturi's long overdue equity grant*. Thus, Kitsune America's Complaint asks this Court to decide that Kasturi was neither authorized nor entitled to have counsel document the equity grant. But, of course, how can this Court determine whether counsel properly prepared documentation memorializing the equity grant when such a finding, at least in Kasturi's favor, necessarily recognizes that Kasturi was entitled to the equity grant in the first instance? Litigation of Kitsune America's claim here, by necessity, will require this Court to adjudicate the very same issue Kitsune Parent placed before the French Court. In other words, the Kitsune Parties have filed two separate lawsuits requiring adjudication of the same fundamental question – was Kasturi entitled to equity? They have no basis to complain that some of Kasturi's Counterclaims ask this Court to decide the same issue.

Against that backdrop it is clear that the parties' claims are inextricably intertwined and *all* relate to, and arise from, a New York employment relationship between a then-New York resident,

3

Kasturi, and a New York corporation.  The Kitsune Parties' senseless bifurcation of this dispute should not be sanctioned by this Court in the name of "comity".  Instead, it is black-letter law that while this Court *may* choose to surrender jurisdiction, it is certainly ***not*** required to do so because of a pending related action in a foreign jurisdiction.  In fact, applicable law mandates that ***absent a showing of 'exceptional circumstances' by the movant***, this court should ***not*** surrender its jurisdiction. Kitsune America has failed to make such a showing.  There are no exceptional circumstances, only a reality that claims relating to the terms of a New York employee's employment with a New York corporation should be adjudicated in New York.

## FACTUAL BACKGROUND

Kasturi incorporates by reference his allegations in the Counterclaim and Third-Party Complaint filed by Kasturi on September 3, 2024 (ECF #14) (the "Counterclaim").

## LEGAL ARGUMENT

### I.   THIS COURT SHOULD MAINTAIN AND EXERICSE ITS JURISDICTION

The 'prior action pending' doctrine relied upon by Kitsune America does not require this Court to surrender its jurisdiction to the Commercial Court of Paris, and the relevant factors discuss below support this Court retaining its jurisdiction in all respects.  While this Court has the discretionary power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction, there is no requirement the Court exercise that discretion.  In fact, the weight of authority strongly falls in favor of this Court retaining jurisdiction.  Federal courts must be mindful of their "virtually unflagging obligation ... to exercise the jurisdiction given them." *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.,* 2013 WL 2531277, at *3 (S.D.N.Y. June 10, 2013) *citing Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). *See also Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.,* 466 F.3d 88, 92 (2d Cir. 2006).

4

The Second Circuit has held that "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, *but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction*." *Id.* (emphasis supplied).

Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict requiring dismissal or the imposition of a stay. *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir. 1987). Rather, "'[p]arallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.'" *Id., quoting Laker Airways, Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984), *citing Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236."

As such, the clear legal standard is that, barring a showing of exceptional circumstances, *all* aspects of this action should remain before this Court, even in the presence of the parallel French Action. As discussed below, Kitsune America is utterly unable to meet the high bar of demonstrating "exceptional circumstances". On the contrary, it is clear that this Court should maintain jurisdiction over this action – a dispute between a New York employee and his New York employer regarding his New York employment. Kitsune America, as it must, agrees with that premise and admits the same in its motion.

Where Kitsune America claims an exception should be made is solely with respect to Kasturi's damage claims relating to the equity grant in Kitsune Parent. Kitsune America argues that because the matter involves whether Kasturi is an equity owner of a French company, this Court should dismiss Kasturi's claims here in favor of Kitsune Parent's first-filed declaratory judgment claim in the French Action. But that argument misstates reality. Whether the Kitsune

5

Parties agreed to issue an equity grant to Kasturi as part of his employment compensation with Kitsune America is the question actually being litigated. If that question is answered in the affirmative, then the question becomes the amount of damages Kasturi is entitled to. Kasturi will not become an owner of the French company. As such, this is simply a dispute over employee compensation – identical to the balance of not only Kasturi's remaining Counterclaims that are not challenged by Kitsune America, but also the entirety of Kitsune America's own affirmative claims filed to commence this litigation. It is only logical that this Court, situated in New York, should be the forum for a dispute over New York employee compensation.

American courts have consistently held that the terms of employment relationships between American parties should be adjudicated in America under American laws. *See e.g., Dailey v. Transitron Elec. Corp.,* 475 F.2d 12, 14 (5th Cir. 1973) (holding that Texas law should apply to breach of employment contract action instead of Mexican law where both employer and employee were American citizens and/or incorporated under the laws of America, respectively); *see also 3D/Int'l, Inc. v. Romano*, 811 F. App'x 244, 248 (5th Cir. 2020) (holding that Texas law should apply to breach of employment contract action instead of Mexican law where: (i) contract has Texan choice-of-law provision; and (ii) Texas has "most significant relationship" to employment contract where place of contract and place of negotiation were in Texas). The same legal concepts have been applied by this Court more broadly to contractual disputes in general. *See Funicular Funds, LP v. Pioneer Merger Corp.,* 700 F. Supp. 3d 49, 59 (S.D.N.Y. 2023) (Refusing to cede jurisdiction in matters relating to a Cayman liquidation to a Court of the Cayman Islands because questions involving New York law are better left to the New York Court).[2]

---

[2] While Kitsune America tries to cast the dispute over the equity grant as one involving French law, the reality is the proposed employment agreement it presented to Kasturi containing the initial equity grant provides that "***Any controversy or claim arising out of or relating to this***

6

In the face of this unequivocal precedent, the factors articulated by Kitsune America as favoring this Court's exercise of its discretion to dismiss or stay the equity related Counterclaims fall, as described below, far short of the required exceptional circumstances necessary for the requested relief sought by Kitsune America.  As such, the motion should be denied.

> **A.    The Similarities Between the Parties and Claims Asserted in the French Action Only Further Demonstrate Why This Court Should Retain Jurisdiction**

The fact that the parties and issues in the French Action are similar to the issues before this Court should not sway this Court to abandon its jurisdiction – rather, this similarity only highlights the inappropriateness of Kitsune Parties' procedural posture.  It is not Kasturi who is "conflating" Kitsune Parent with Kitsune America—it is the Kitsune Parties.  Kasturi very clearly alleged in the Counterclaims that his employment was, at all times, with Kitsune America, and that one of the terms of that employment was that he would receive equity in Kitsune Parent as additional compensation and consideration for his New York employment.[3]  The equity grant was so intertwined with his New York employment that it's vesting was tied to his length of employment. Kitsune America has already conceded, in its motion, that claims relating to Kasturi's employment compensation are properly before this Court.  There is no legitimate basis to distinguish the so-called "Equity Counterclaims" from the balance of the claims Kitsune America wants this Court to litigate.

---

*Agreement shall be brought solely in the federal or state courts having jurisdiction over New York County, New York, to whose exclusive jurisdiction the parties hereby irrevocably submit*." (Counterclaim ¶45); *see also* § 4.5 of Ex. A to the Declaration of Cameron A. Welch, dated November 21, 2024 (the "Welch Dec."); *see also* Ex. B to the Welch Dec (email correspondence where Kitsune America confirms that equity grant is not conditional).  Kitsune America's about-face should not be countenanced by this Court.

[3] *See, e.g.,* Counterclaim ¶¶3, 27, 29, 39, 44, 46, 48, 57, 109, 117, 122.

The Kitsune Parties, on the other hand, have consistently blurred the lines between the parties in an attempt to create the illusion the dispute involves two distinct issues – Kasturi's employment compensation ***and*** a separate equity grant in Kitsune Parent, which the Kitsune Parties seek to style as a "French" matter.  Notwithstanding the efforts to style this as two distinct disputes, Kitsune Parent's complaint in the French Action spills much ink describing, in detail, the correspondence with Kasturi negotiating the terms of Kasturi's employment contract with Kitsune America ("MK Inc." in the French Complaint), including both his annual compensation and his equity grant. (Ex. C to Counsel Dec.[4], ¶¶12-91). Kitsune Parent then unabashedly states it specifically filed the French Action with the direct intention of avoiding litigation before this Court, begging the French court to accept the action so as to avoid litigation here.  (*Id*., ¶103)[5]. The French Complaint then abruptly pivots to allege, in conclusory fashion, that "[s]ince the situation presents ***foreign elements***, it is first necessary to determine the law applicable to the assessment of the existence of the consent." (*Id*., ¶109) (emphasis supplied). With the so-called 'situation' being Kasturi's employment agreement with Kitsune America – a matter for New York law – the complaint in the French Action only emphasizes that the equity related counterclaims are part and parcel of the employment claims Kitsune America concedes belong here.

---

[4] "Counsel Dec." refers to the declaration filed by Paul Haberman on October 24, 2024. ECF #20-1.

[5] Claiming the so-called "massive confusion" created by Kasturi in alleging all claims relate to his employment – which they unequivocally and indisputably do – in his "draft complaint" is only intended to "justify the alleged jurisdiction of the American courts over Kitsune [Parent] in order to force the latter to settle in order to avoid necessarily very costly litigation before the American courts."  That is the same section of the French Complaint that bears the heading "***The threat of a jury trial in New York against Kitsune Creative and*** <u>***MK Inc. [Kitsune America]***</u>" – as though a New York Corporation being required to have New York employment claims adjudicated by a jury in its home state is some form of extensional threat that must be guarded against.  Such blatant forum shopping – especially by the New York corporation that commenced this action seeking relief from this very Court that apparently poses "a threat" -- should be rejected.

8

Kitsune America has also consistently conflated the two actions and parties as it has brought this motion seemingly on behalf of Kitsune Parent, as Kitsune America is not a party to the French Action. It is disingenuous for Kitsune America to claim that the "primary issue in this lawsuit [is] whether or not [Kasturi] misappropriated [Kitsune America's] money while he was employed in a position that gave him the opportunity to do so," (Moving Br. [6], 12) without acknowledging that the allegedly "misappropriated" funds were (properly) expended in connection with documenting Kasturi's equity grant in Kitsune Parent. It is impossible for this Court to adjudicate whether Kasturi allegedly 'misappropriated funds' without first adjudicating whether Kasturi was entitled to memorialize the equity grant in the first place. In other words, if the Court rules in Kasturi's favor on that claim it has inherently ruled Kasturi is entitled to the equity grant. Why else would he be permitted to document it? In spite of Kitsune America's attempt to claim otherwise, there is no bright line between Kitsune America's claims and Kasturi's equity-based counterclaims and third-party claims – all of these claims flow from Kasturi's employment, and what compensation he was entitled to for his work.  And that is why it is improper to dismiss or stay one component of these inextricably intertwined claims relating to Kasturi's employment relationship in favor of the French Action.  The result will be piecemeal litigation of overlapping claims, all of which are properly adjudicated here.

This Court, which is located in the very county in which the employment agreement was negotiated and where both parties reside, should not surrender its jurisdiction to a foreign court with only a negligible connection to the issues at hand. This Court should maintain its jurisdiction and adjudicate all claims arising out of the employment agreement between Kasturi and Kitsune

---

[6] "Moving Br." refers to the brief filed by Kitsune America on October 24, 2024. ECF #20.

America because Kitsune America has failed to meet its burden in demonstrating 'exceptional circumstances' for dismissal or a stay. *See Royal and Sun Alliance* (holding that district court erred in granting motion to dismiss where factors the district could relied upon were "not sufficient to overcome the virtually unflagging obligation of a district court to exercise the jurisdiction conferred on it by Congress."); *see also Keswani v. Sovereign Jewelry Inc.,* 2021 WL 4461332, at *9 (S.D.N.Y. Sept. 29, 2021) (denying motion to dismiss pursuant to prior action pending doctrine where "Defendants have not demonstrated the existence of "exceptional circumstances" justifying the Court's relinquishment of jurisdiction in this case.")

### B.    Judicial Economy Favors Retaining Jurisdiction

Kitsune America's argument that judicial economy favors dismissal completely ignores the reality that even if its motion were granted, litigation on whether the equity grant was agreed to would continue in this Court – because, as described above, Kitsune America's own affirmative claims put that matter squarely at issue. This is not a situation where the dismissal or stay of the Counterclaims would bring one suit to a halt. The parties and this Court would continue to spend time (and, for the parties, money) litigating the various overlapping claims. In that regard, there is no benefit to a stay or dismissal.

The crux of Kitsune America's judicial economy argument focuses on the notion that allowing the equity counterclaims to survive will cause Kitsune America hardship because it will have to defend against them, rather than simply seeking to litigate its own, self-described, "streamlined" claims, to a swift conclusion before this Court. Such an argument is self-serving and unavailing.

As stated *supra*, Kitsune America's claims regarding the alleged misappropriation of funds (as payment of legal fees for his own "personal" matter documenting the equity grant) and Kasturi's counterclaims regarding his compensation flow directly from the employment

10

68201/0001-48749918

agreement. It is inaccurate to state that those claims, on their own, "would not require expert analysis and can thus be subject to a streamlined discovery period that requires little more than document exchange and the testimony of material witnesses." (Moving Br., 13). Even if this motion were granted, Kitsune America and Kasturi would still need to conduct discovery as to, among other things, the existence of Kasturi's employment contract, the terms of that contract – *including the equity grant* – communications between Kitsune America and Kasturi regarding the parties' understanding of the employment contract and the expenses Kasturi was authorized to incur in memorializing the equity grant, and expert testimony regarding the damages the parties may be entitled to.  Simply adding an additional component of that expert analysis – the damages associated with the deprivation of the equity grant – does not constitute 'exceptional circumstances' requiring this Court to surrender its jurisdiction.

Kitsune America likewise argues, in utterly disingenuous and self-serving fashion, that discovery regarding Kasturi's equity related Counterclaims would be "highly prejudicial to [Kitsune America] who, again, was not party to the equity discussions, the complication of this case by way of Defendant's Equity CC is an affront to the idea of judicial economy," (Moving Br., 14) and that "entertaining the Equity CC will only cause a duplication of costs (submissions, translation costs for the submissions and expert reports) as it will require all relevant parties to plead twice the same issues before two distinct forums[]", (*Id.*) These arguments ignore the reality that: (i) the equity grant was promised as a condition of, and consideration for, Kasturi's U.S. employment with the New York Corporation, Kitsune America; (ii) Kitsune America is wholly owned by Kitsune Parent – the same parties on the Kitsune Parties' side of the caption negotiated the terms of Kasturi's employment and supervised his work; (iii) Kitsune America's affirmative claims put the equity grant squarely at issue, making it the subject of the very same discovery and

11

translations it complains will be required if its motion is not granted; and (iv) Kitsune America and Kitsune Parent are the parties who made the decision to bifurcate the relevant claims by filing actions in two different courts as part of an improper attempt to make litigation unduly burdensome for Kasturi – knowing full well that such gamesmanship would result in dual litigations.  Kasturi should not be deprived of his rights before this Court because of the Kitsune Parties' forum shopping and procedural gamesmanship.

Finally, it is currently unclear as to whether the French Action will continue, as Kasturi intends to raise several threshold issues in front of the Commercial Court of Paris that might lead to the French Action's stay or dismissal. Thus, Kitsune America's unsupported claim that the French Action "could render such a potential drag on the litigation of this case moot by the time that it is completed[]" (*Id.*) is entirely premature and unfounded.

Simply put, irrespective of whether this motion is granted there will be two separate, overlapping litigations relating to Kasturi's employment and, specifically, the equity grant. As cited above this is not a basis for this Court to withhold jurisdiction.  The law recognizes and accepts simultaneous pending litigation in U.S. and foreign courts.  As such, judicial economy does not afford Kitsune America the succor it needs to demonstrate the exceptional circumstances necessary to prevail on its motion.

       **C.**    **Kitsune Parent's Improper, Anticipatory French Declaratory Judgment Action is No Basis for this Court to Relinquish its Jurisdiction**

Kitsune America should not reap any benefit from the filing of the French Complaint in response to Kasturi's draft complaint sent as part of settlement discussions.  Instead, this Court should treat the French Action as an 'anticipatory filing' within the meaning of the first-filed rule. While the first-filed doctrine has not been directly raised here, Kitsune America nonetheless asks this Court to accept the first-filed French Action as the sole case in which Kasturi's entitlement to

12

the equity grant will be litigated.  Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, "the first suit should have priority," and the later-filed suit should be dismissed. *See Oleg Cassini, Inc. v. Serta, Inc.,* 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012). However, the Second Circuit has identified certain "special circumstances" that mandate divergence from the first-filed rule. "Special circumstances" include "manipulative or deceptive behavior." *Emp'rs Ins. of Wausau,* 522 F.3d at 276, including the filing of an improper anticipatory declaratory judgment action. *Id.* at 275; *Pippins v. KPMG LLP*, 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011).

An improperly first-filed action is considered anticipatory when such action is filed in response to a specific threat of litigation, including deadlines, venues, and type of relief. *See Oleg Cassini,* 2012 WL 844284, at *5. That is exactly what happened here and, as noted above, Kitsune Parent admits as much in its French Complaint.  Kasturi's counsel sent Kitsune Defendants a draft complaint, which indicated the venue and type of relief that Kasturi would be pursuing. *See* Ex. C to Welch Dec. In response, and in the midst of settlement discussions, Kitsune Parent filed the French Action. The complaint in the French Action actually has a section titled "***The threat of a jury trial in New York against [Kitsune Parent] and [Kitsune America]***", wherein Kitsune Parent represents to the Court that it filed the French Action seeking a declaratory judgment after receiving the draft complaint from Kasturi "in order to avoid necessarily very costly litigation before the American courts." Ex. C to Counsel Dec. At p. 36, ¶ 103. The French Action is, by the Kitsune Parties' own admission, the very embodiment of an 'anticipatory filing', and this Court should treat it as such and afford it no deference.

In fact, such an improper 'first filing' should be seen for exactly what it is – a large, international company's attempt to frustrate Kasturi's rights and burden him with excessive

13

expenses by baselessly bifurcating intertwined claims, and forcing Kasturi to maintain two separate actions in two countries. Such a factor should count against Kitsune America's request for dismissal, not constitute the necessary exceptional circumstances for this Court to relinquish its jurisdiction.

> **D.    This Court is the Most Adequate Forum to Determine the Rights and Obligations Arising Under an American Employment Relationship**

Although Kitsune America cites authority for the proposition that the Commercial Court of Paris is generally considered to be a court of competent jurisdiction, it ignores its obligation to demonstrate that Court is the "most adequate" forum for the adjudication of this specific New York employment dispute. Kasturi is an American citizen and resident who entered into an employment contract with an American company formed under New York law and based in New York. Logic dictates that any disputes arising from that employment relationship should be resolved in an American court, specifically a New York court. Kitsune America agrees. It not only admits as much in its motion (except as to Kasturi's damage claim for one aspect of his compensation, the equity grant), but it recognized that reality at all times prior to the filing of the French Action. Nothing demonstrates that fact better than the initial employment agreement Kitsune America sent Kasturi, which documents the equity grant and provides that "[a]ny controversy or claim arising out of or relating to this Agreement shall be brought solely in the federal or state courts having jurisdiction over New York County, New York, to whose exclusive jurisdiction the parties hereby irrevocably submit." (Counterclaim ¶45). Except when procedural gamesmanship is involved, Kitsune America has always recognized this Court is the proper forum for all aspects of the parties' dispute.

The host of cases Kitsune America cites in support of the proposition that the Commercial Court of Paris is a court of competent jurisdiction are of no moment. They do not, as a matter of

14

law, make a Parisian court which specializes in French business disputes the most adequate or appropriate forum to determine issues arising from an American employment contract with an American employee. In fact, one of the cases relied upon by Kitsune America drives this distinction home by citing to another decision in which the Court held that "***notwithstanding the fact that the Commercial Court of Paris was competent to handle the dispute***, ... ***even if the [Southern District Bankruptcy] Court did not have exclusive jurisdiction, it was the most appropriate forum*** given its familiarity with the releases." *In re Solutia, Inc.*, 653 B.R. 99, 117 (Bankr. S.D.N.Y. 2023) (italic emphasis in original) discussing *In re: Atari, Inc.*, 2016 WL 1618346, *7 (S.D.N.Y. April 20, 2016). Similarly here, even though the Commercial Court of Paris is a competent court, the Southern District, a court that is: (i) located in the state in which Kitsune America is incorporated and headquartered, and where Kasturi lived for the majority of his employment with Kitsune America; (ii) was initially designated by Kitsune America as the appropriate forum; and (iii) which is intimately familiar with American contract and employment law, is clearly the ***most*** adequate and appropriate forum.

Furthermore, it is as-yet undetermined whether the Commercial Court of Paris is proper forum for the French Action. It is inaccurate and misleading to state that Kasturi "has not filed a motion to dispute the jurisdiction of the Commercial Court of Paris in relation to the French Complaint" (Moving Br., 2). As Kitsune America is well aware, the time for Kasturi to challenge jurisdiction of the French Court has not yet arrived and the initial October 24, 2024 hearing was solely procedural, for purposes of counsel entering their appearances. *See* Declaration of Philippe Rousseau, dated November 20, 2024 at ¶¶ 4-10. Kasturi has every intention of disputing jurisdiction when he has the opportunity to do so before the Commercial Court of Paris. *Id.* at ¶ 11. And such a challenge will not be discretionary, as is Kitsune America's motion before this

15

Court.   Therefore, this factor does not constitute the necessary "exceptional circumstances" required for this Court to even consider exercise its discretion to relinquish jurisdiction.

### E.    The Southern District is Significantly More Convenient than the Commercial Court of Paris

Kitsune America has likewise failed to demonstrate that the Commercial Court of Paris is more convenient than the Southern District such that convenience of the respective forums constitutes the requisite exceptional circumstances necessary to justify dismissal or a stay of a portion of this action.   At best, Kitsune America argues there is nominal difference between litigating in Paris and New York based solely on the contentions that (1) the flight times to Paris and New York from Los Angeles (where Kasturi currently resides) are marginally similar, and that (2) Kasturi previously worked for "a French group of companies" (Moving Br., 17).   As such, Kitsune America argues there is no "undue inconvenience" for Kasturi to have to litigate in both Paris and New York.

Of course, undue convenience is precisely what the Kitsune Parties sought to create when they filed two separate lawsuits on two different continents relating to the same employment dispute.   While Kasturi may have to temporarily live with that reality (until he can get the French Action dismissed at the appropriate procedural juncture), the dual litigation cannot serve as grounds to divest this Court of jurisdiction.   Such an outcome would simply reward the Kitsune Parties' procedural gamesmanship while leaving the same reality, litigation in two forums.

In any event, Kasturi is a resident of Los Angeles who currently has a job in Los Angeles. It would be significantly more convenient for Kasturi to litigate in a forum within the same country, where he would not have to incur the additional time and expense of international travel. *See Sund v. Marriott Int'l, Inc.,* 2020 WL 2085469, at *8 (D. Md. Apr. 30, 2020) ("…the inconvenience of travel cannot simply be measured by the number of hours expended in transit—there must also be

16

consideration of the other realities associated with traveling internationally, such as navigating international borders…") It is immaterial that "Defendant has already travelled to Paris, and is, more generally, a frequent user of aviation as a means of commuting." (*Id.*). Bald, unsubstantiated contentions that Kasturi previously travelled to Paris on a handful of occasions, or flies in airplanes, does not make any future air travel to Paris less inconvenient. That, coupled with the basic argument that the flight times to New York and Paris are only a few hours different does not satisfy Kitsune America's hefty burden of demonstrating 'exceptional circumstances' on this motion.

Furthermore, Kasturi, an individual, has far fewer resources at his disposal to expend on litigating this action than the far larger Kitsune Parties – which seek to exploit their resource advantage by, irrespective of the outcome of this motion, litigating against Kasturi on two continents. "Where a disparity exists between the means of the parties, …, the court may consider the relative means of the parties in determining where a case should proceed."*Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 359 (E.D.N.Y. 2016) citing *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 135 (S.D.N.Y. 1994); *see also Stroyek v. Wal-Mart Stores, Inc.,* 2018 WL 3361057, at *3 (E.D. Pa. July 10, 2018) ("Stroyek, an individual, will incur greater expense if her case is transferred than Walmart will incur if the case remains in the Eastern District. As a large corporation, Walmart possesses greater financial resources and more personnel to defend the claims against it.") It is clear that the economic disparity between Kasturi and Kitsune America highly favors this forum as the most convenient. More significantly, Kitsune America's hollow arguments that the Commercial Court in Paris is almost, but not quite, as convenient cannot serve as the exceptional circumstances necessary to divest Kasturi of litigating in his chosen forum on "comity" grounds.

17

**F.    Kitsune America's Misleading Arguments Regarding its Lack of Involvement and Substantial Prejudice Do Not Support Dismissal or a Stay of this Action**

Kitsune America's final, unavailing argument asks this Court to ignore reality. Kitsune America claims that as "a non-participant in the French Complaint, [it] would be substantially prejudiced by the inclusion of the equity/incentives dispute in this matter" (Moving Br., 19). Kitsune America then argues that this litigation will be overly complicated by inclusion of the so-called "Equity Counterclaims". As such, Kitsune America argues, without any legal support, that because litigating the "Equity Counterclaims" may be more complex, this Court should just dismiss them. Not only is this a recasting of the same flawed arguments already addressed at length above, but it is utterly false and misleading. Also, after considerable searching, we could not find authority requiring dismissal of claims in Federal Court simply because they may be complicated or require expert testimony to establish damages.

- Kitsune America's first bulleted argument that this Court will be unnecessarily burdened with a decision regarding entitlements under French law absent dismissal is wrong in multiple respects because: (i) Kasturi maintains New York law governs the parties' agreement on the equity grant; and (ii) as stated above, whether there was a meeting of the minds on the equity grant is an issue that will be litigated in connection with Kitsune America's affirmative claims relating to the alleged misappropriation of corporate funds on legal fees;

- Kitsune America's second bulleted argument that this Court will be unnecessarily burdened with a decision of whether damages or specific performance is an appropriate remedy is likewise entirely incorrect as Kasturi has not asserted a claim for specific performance – only monetary damages.

- Kitsune America's third bulleted argument once again misstates reality. There will be expert testimony on the damages claims irrespective of whether the "Equity Counterclaims" are dismissed. Just because the case may be more complex, or tried before a jury, does not require its dismissal. Kitsune America cites no support for its contention that a perceived increased likelihood of a jury trial constitutes exceptional circumstances favoring dismissal.

18

In sum, it is a false dichotomy to label Kasturi's counterclaims as "Equity Counterclaims" and "Labor Counterclaims". All counterclaims arise from the same source, i.e., Kasturi's employment agreement with Kitsune America. The same is true with respect to Kitsune America's affirmative claims against Kasturi. It would be highly prejudicial to Kasturi if the Kitsune Parties' procedural gamesmanship was rewarded by this Court with a dismissal or stay of this action, unnecessarily bifurcating a single employment dispute and depriving Kasturi of one competent, appropriate court hearing all issues arising from his New York employment with a New York employer.

## CONCLUSION

Kitsune America has utterly failed to demonstrate the requisite exceptional circumstances for this Court to surrender its jurisdiction in favor of piecemeal litigation of related and overlapping claims on two continents. It is undisputed this Court has jurisdiction over all aspects of this New York employment dispute. It is respectfully submitted that this Court should retain its jurisdiction and deny Kitsune America's motion in its entirety.

Dated: November 21, 2024
       New York, NY

*/s/ Cameron A. Welch*
Randi Kochman, Esq.
Cameron A. Welch, Esq.
Arielle H. Wasserman, Esq.
COLE SCHOTZ P.C.
1325 Avenue of the Americas
Suite 1900
New York, NY 10019
(212) 752-8000

*Counsel for Counterclaim and Third-Party Plaintiff Vinod Kasturi*

19

68201/0001-48749918