UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MAISON KITSUNE, INC.,

                                      Docket No. 24-cv-04431 (ALC)

               Plaintiff,

               v.

VINOD KASTURI,

               Defendant.
-----------------------------------------------------------------x

VINOD KASTURI,

               Counterclaimant and
               Third-Party Plaintiff,

               v.

MAISON KITSUNE, INC. and KITSUNE
CREATIVE SAS,

               Counterclaim and
               Third-Party Defendants.

-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF/COUNTER-DEFENDANT MAISON KITSUNE, INC.'S MOTION TO
<u>DISMISS COUNTERCLAIMS</u>**

Of Counsel:

Paul S. Haberman
Mueller Haberman Law Group
19 Engle Street, Tenafly, New Jersey 07670
88 Pine Street, 22nd Floor, New York, New York 10005
phaberman@muellerfirm.com: Email
(201) 567-4969: Phone

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………………..iii

PRELIMINARY STATEMENT……………………………………………………………………….1

ARGUMENT………………………………………………………………………………………...3

    I.     THIS COURT SHOULD NOT MAINTAIN AND EXERCISE ITS
JURISDICTION OVER THE COUNTERCLAIMS……………………………...3

          i.     The Similarities Between the Parties and Claims Asserted in the French
Complaint Demonstrate Why the Counterclaims Should be Dismissed….4

          ii.    Judicial Economy Favors Dismissing the Counterclaims in Favor of the
French Complaint……………………………………………………………….6

          iii.   Third-Party Defendant's Declaratory Judgment Action is Exactly Why
This Court Should Relinquish Its Jurisdiction……………………………6

          iv.   The Commercial Court of Paris is the Most Adequate Forum in
Which to Litigate the Equity Counterclaim……………………………….7

          v.    The Commercial Court of Paris and the Southern District of
New York are Similarly Convenient to the Parties………………………..8

          vi.   There Would be Prejudice to Plaintiff if the Equity
Counterclaims are Heard in the Instant Matter Rather Than as
Part of the French Complaint…………………………………………...9

          vii.  There are Readily Identifiable Exceptional Circumstances
Militating in Favor of Hearing the Equity Counterclaims in Paris………..9

CONCLUSION………………………………………………………………………………..10

## TABLE OF AUTHORITIES

**Cases**

Doody v. Nationstar Mortgage, LLC, 2023 WL 8476322 (D. Conn. Dec. 7, 2023)……………3,4

Employers Ins. of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271 (2d Cir. 2008)……..7

Leopard Marine & Trading, Ltd. v. Easy St. Ltd., 896 F.3d 174 (2d Cir. 2018)……………...9-10

Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88 (2d Cir.2006)………………………………………………………………..3, 9, 10

## PRELIMINARY STATEMENT

The opposition filed by defendant VINOD KASTURI ("Defendant") has provided useful clarity in what was until now Defendant's wasteful efforts to conflate not only two distinct issues (i.e., the employment related claims and the equity related counterclaims, the ("Equity CC")), but also two distinct parties (i.e. plaintiff MAISON KITSUNE, INC. ("Plaintiff") and its parent company, third-party defendant KITSUNE CREATIVE ("Third-Party Defendant")). First, with respect to the conflation of the two distinct parties, in the identical counterclaim and third-party complaint ("CC Complaint"), Defendant alleged that he had accepted:

> "to become the Chief Executive Officer and Head of Kitsune America […] based on the explicit, written agreement with Counterclaim Defendant Kitsune America [Plaintiff] and Third-Party Defendant Kitsune Parent (collectively, "Kitsune Defendants"), which promised that Kasturi would receive a specific grant of 5% equity in the Kitsune Parent". D.E. No. 14, p. 8 § 2.

That position has now changed.   Indeed, the approach taken by Defendant in his opposition is that the Equity CC are a different part of the same employment-related dispute for which Plaintiff filed this lawsuit.  In his opposition, Defendant has now excluded Third-Party Defendant and recalibrated his case theory: it is no longer the "Kitsune Defendants" but Plaintiff alone that made the equity promise.  This profound recalibration of his case theory is exemplified by the following sentence:

> "To induce Kasturi to leave his existing New York employer and become its CEO, ***Kitsune America agreed to provide Kasturi* with a minority equity interest in its sole shareholder and corporate parent**, third-party defendant, Kitsune Creative SAS ("Kistune Parent")" D.E. No. 25, p. 1 (Emphasis added.).

Having said that, if it is Defendant's honest position (as taken in the opposition) that his counterclaims/third-party claims all arise from the employment agreement that

1

was never finalized between Plaintiff and Defendant, the counterclaims at issue in the instant motion should be summarily dismissed, as Third-Party Defendant was never a party to the any version of the proposed employment agreement, and it and Defendant are otherwise already litigating the equity issue in the Commercial Court of Paris (the "French Complaint"). To put it another way, in Defendant's table-banging, finger-wagging, *ipse dixit* plea to view him as the innocent victim of some intercontinental assault, he has effectively conceded that issues raised in the French Complaint should not be litigated here with Third-Party Defendant.

Defendant should likewise enter a resolution to the French Complaint, i.e., that Third-Party Defendant and Defendant never entered into an agreement as to equity. Rather, Defendant has maintained its third-party claims against Third-Party Defendant by serving process on it, meaning that it wishes for Third-Party Defendant to be a party here. And Defendant has not submitted any brief acknowledging and accepting the declaratory judgment sought by Third-Party Defendant before the Commercial Court of Paris. The reason is plain: if Defendant maintains any of its claims against Third Party Defendant as a third-party defendant to the Equity CC, then this Court will have to decline to exercise jurisdiction because that dispute is already pending and has been since June 10, 2024. Exh. A. But Defendant cannot have its cake and eat it. He cannot at the same time allege that its claims are entirely related to an employment issue against his former employer (i.e. Plaintiff), and at the same time seek to involve in those same claims Third-Party Defendant in that same employment relationship where Third-Party Defendant is not and has never been Defendant's employer.

2

With respect to the conflation of the two distinct issues, Defendant purports that the Equity CC arise from an employment agreement which, as plainly documented by his own exhibits, was never executed, in no small part because of Defendant's demand that Plaintiff somehow furnishes him an equity interest in Third-Party Defendant, a proposition which makes no sense, as Plaintiff is a subsidiary of Third-Party Defendant and thus in no position to bestow shares of its parent company upon Defendant. Moreover, it is plain that the nature of the legal obligations that may arise from an employment relationship are distinct from those arise from a purported equity agreement.

For all of the reasons discussed within the initial Memorandum of Law, and those to be discussed further herein, it is respectfully request that the instant motion be granted in its entirety.

## ARGUMENT

### I.  THIS COURT SHOULD NOT MAINTAIN AND EXERCISE ITS JURISDICTION OVER THE COUNTERCLAIMS

It bears repeating that [t]he "'prior act pending' doctrine recognizes the "principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency.'" Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir.2006).  Accordingly, "[i]t is proper to either stay or dismiss the subsequently-filed case in deference to the earlier filed case." Doody v. Nationstar Mortgage, LLC, 2023 WL 8476322, *3 (D. Conn. Dec. 7, 2023) (internal citation omitted). "Dismissal is appropriate where 'an identity of issues exists and the controlling issues in the dismissed action will be determined in the other lawsuit.'" Id. (internal quotation omitted).

In Defendant's opposition, rather than acknowledging what is plain and chronologically indisputable, which is that the French Complaint, in which Plaintiff is not a party, was filed several months in advance of the Equity CC, Defendant instead suggests something that is both misleading, and not at all a certainty in stating:

> "Whether the [Defendant and Third-Party Defendant] agreed to an equity grant to [Defendant] as part of his employment compensation with Kitsune America is the question actually being litigated. If that question is answered in the affirmative, then the question becomes the amount of damages [Defendant] is entitled to. [Defendant] will not become an owner of [Third-Party Defendant]." <u>D.E</u>. No. 25 at p. 6.

The question is once again begged why Plaintiff, a non-party to the French Complaint, would be compelled to have litigate an issue before this Court that it had no say in as a subsidiary of Third-Party Defendant. Plaintiff filed this case because of the financial mismanagement which led to Defendant's termination, not to dispute "ifs" as to Defendant's compensation for equity that it had no capacity to put itself on the hook for, as a subsidiary, when it hired Defendant. The "ifs" concerning any equity interest, or a compensation value to be derived therefrom, are at the core of the French Complaint, of which Third-Party Defendant alone is a claimant. As demonstrated in the initial motion papers, the French Complaint was indisputably filed first. Accordingly, "[i]t is proper to either stay or dismiss" the Equity CC at this time. <u>Doody</u>, 2023 WL 8476322, at *3.

i.   **The Similarities Between the Parties and Claims Asserted in the French Complaint Demonstrate Why the Counterclaims Should be Dismissed**

For all of the reasons discussed at length in Section I(i) and (ii) of the initial Memorandum of Law, it is respectfully requested that the Court summarily disregard Defendant's assertions that this Court should retain jurisdiction as a result of the similarities between the Parties and claims. Indeed, the initial motion papers laid bare all

4

of the ways in which Defendant himself is conflating the claims instead of simply answering the claims of financial mismanagement as to just one of the entities, Plaintiff.

Moreover, while Defendant is claiming that Defendant is being disingenuous in its casting of the primary issue in this lawsuit as wholly separate and distinct from the French Complaint, D.E. No. 25 at p. 9, Defendant himself is straining the outer limits of disingenuousness in the same paragraph of his opposition by ignoring the fact that very little, if any, of the money that Plaintiff alleges he misappropriated was tied to some equity negotiation.  As alleged the Complaint:

> "20.    Around the same time that Plaintiff discovered the multi-month overpayment of Defendant's salary at a time when Defendant himself was responsible for approving Plaintiff's payroll, Plaintiff also discovered that Defendant had submitted seven (7) invoices for legal services in 2022 from non-party Foley Hoag LLP for payment by Plaintiff in the aggregate amount of Twenty Thousand Seventy-Seven U.S. Dollars and Seventy-Five Cents ($20,077.75 U.S.)

> "21.    The invoices arose from Foley Hoag LLP's work for Defendant in connection with his "employment separation," the "review of [an] employment agreement," and the "review of [non-party] After Market's comment to secured parties [,]" all of which were legal matters personal to Defendant, and not for anything related to Plaintiff's business.  Indeed, these aforementioned charges were expressly accrued by Foley Hoag LLP for legal work that was averse to the interests of Plaintiff, as it was done in preparation for Defendant's departure from Plaintiff's employ.

> "22.    Plaintiff further discovered that Defendant had submitted to Plaintiff's accountant for payment, and that Plaintiff had thus paid to his private attorneys, a total of nine (9) invoices from Foley Hoag LLP representing an aggregate amount of Fifty- Nine Thousand Five Hundred and Twenty-Three U.S. Dollars and Seventy-Five Cents ($59,523.75 U.S.) from the period between July 1, 2023 to January 31, 2024.  As with the other invoices itemized above, the paid invoices were for matters wholly personally to Defendant and/or averse to Plaintiff.

> "23.    In sum, Defendant was improperly paid, and inappropriately retained excess payment in the amount of $116,307.83 U.S., on the one hand, while also using Plaintiff's money to pay $59, 523.75U.S. in personal legal bills on the other." D.E. No. 1.

To put it plainly, the main focus of the instant lawsuit is, and remains, Defendant's thieving from Plaintiff for strictly personal reasons. Id. at ¶¶ 21, 22. If Defendant had not misappropriated funds, the instant lawsuit would not have been unnecessary. Defendant and Third-Party Defendant could have just litigated the unrelated equity claims in France, where they were filed before any lawsuit was filed here. Defendant's arguments that the similarities between the instant case and the French Complaint militate in favor of keeping the counterclaims in the Southern District of New York should accordingly be disregarded in the Court's consideration of this motion.

### ii.    Judicial Economy Favors Dismissing the Counterclaims in Favor of the French Complaint

In addition to all of the reasons set forth at length in Section I(iii) of the initial Memorandum of Law, which Defendant does little more than baldly decry as "disingenuous and self-serving" in favor of his own disingenuous and self-serving reasons, it bears noting that Defendant's statement that "it is currently unclear…whether the [French Complaint] will continue, as [Defendant] intends to raise several threshold issues in front of the Commercial Court of Paris that might lead to the [French Complaint's] stay or dismissal." D.E. No. 25 at p. 12 is nothing but fanciful speculation. If nothing has been filed to date to challenge the French Complaint, the Court need not concern itself with such things. Defendant's arguments as to judicial economy militating in favor of keeping the counterclaims before this Court should accordingly be rejected.

### iii.   Third-Party Defendant's Declaratory Judgment Action is Exactly Why This Court Should Relinquish Its Jurisdiction

For all of the reasons discussed at length in Section I(iv) of the initial Memorandum of Law, the Equity CC are to be properly heard in the Commercial Court

6

of Paris, in which a complaint about the same dispute was filed three (3) months before

Defendant's Equity CC.  Defendant's gripe about the French Complaint boils down to

nothing more than the fact that Third-Party Defendant filed a lawsuit first even though

Defendant was the first party to threaten to file a lawsuit. The chronology reads that

Third-Party Defendant recognized it was at an impasse in its talks with Defendant based

upon the draft complaint sent to it during "settlement negotiations." Id. at p. 13.  The

only "manipulative or deceptive behavior" that can be gleaned from the chronology is

that Defendant himself was trying to extract a favorable equity interest by threatening an

imminent lawsuit, especially if he may have been bluffing. Id.; Employers Ins. of Wausau

v. Fox Entertainment Group, Inc., 522 F.3d 271, 276 (2d Cir. 2008). Moreover, a first

filing of legal action following an impasse in contentious negotiations is not a "special

circumstance."  Employers Ins. of Wausau, 522 F.3d at 276.  It is simply what happens

when one party recognizes that the discussion is over before the other party does.  For

this reason and others discussed in the initial Memorandum of Law, it is respectfully

requested that the Court grant the instant motion in its entirety.

### iv.    The Commercial Court of Paris is the Most Adequate Forum in Which to Litigate the Equity Counterclaim

Defendant's position on the most adequate forum is based primarily upon what

the unexecuted "initial employment agreement" that was sent to Defendant by Plaintiff

had as its jurisdiction clause. D.E. No. 25 at p. 14. If the Court were to simply end the

inquiry there, however, that would ignore the fact that: (a) Third-Party Defendant was not

a party to any version of Defendant's employment agreement. Only Plaintiff was; (b)

Third-Party Defendant is a French-based company; (c) it has not been shown that Third-

Party Defendant itself conducts business in the United States; and thus (d) that the Court

7

may not even have jurisdiction over Third-Party Defendant in the first instance.[1]  Indeed, Defendant himself purports only that "[Plaintiff] has always recognized that [the Southern District of New York] is the proper forum for all aspects of the parties' dispute" based upon the "initial employment agreement."  Id.[2]  And Third-Party Defendant is not Plaintiff. Defendant is not accused of misappropriating funds from Third-Party Defendant while he was its employee, he is accused of doing so as Plaintiff's employee.

Defendant ends his argument in this particular section of the opposition by reiterating purported future uncertainties as to the French Complaint based on motion practice that he has not yet undertaken there. Id. at pp. 15-16.  As noted in subsection (ii), above, the Court need not concern itself with any fanciful hopes as to what may happen in the Commercial Court of Paris at this time. Accordingly, for the reasons stated herein, as well as those discussed at length in Section I(v) of the initial Memorandum of Law, the Court should summarily reject Defendant's arguments as the Southern District of New York being the most adequate forum and grant the instant motion in its entirety.

> **v.      The Commercial Court of Paris and the Southern District of New York are Similarly Convenient to the Parties**

Defendant relies on little more than generalities, reiterated dismay that he did not file a lawsuit first, and unbridled *ipse dixit* as to both Plaintiff's motives and Defendant's finances in arguing convenience. D.E. No. 25 at pp. 16, 17.  Accordingly, for the reasons discussed in the initial Memorandum of Law at Section I(vi), the Court should ignore

---

[1] This is expected to be subject to motion practice in this matter now that Third-Party Defendant was served.

[2] Defendant then doubles down on Plaintiff alone ("Kitsune America") by making various arguments as to Plaintiff alone for why the S.D.N.Y. is an adequate venue, and not Third-Party Defendant, on page 15 of its Memorandum. Defendant, in sum, gives the Court almost nothing to work with as to why the Equity CC claims, which are the subject of the French Complaint, cannot be adequately litigated in the Commercial Court of Paris and dropped from the instant matter.

8

Defendant's threadbare argument as to why the Southern District of New York is the more convenient venue and grant Plaintiff's motion in its entirety.

###### vi.    There Would be Prejudice to Plaintiff if the Equity Counterclaims are Heard in the Instant Matter Rather Than as Part of the French Complaint

In Section F of his opposition, Defendant reiterates his belief that Plaintiff has created a "false dichotomy" between the equity and labor/employment claims. At the same time, however, Defendant undercuts his own arguments as to the appropriate venue for the Equity CC by saying that he alone "maintains New York law governs parties' agreement on the equity grant" (not even Plaintiff in this section) before falsely asserting that the equity issue must inevitably be litigated alongside the issue of his misappropriation of corporate funds.  D.E. No. at p. 18.  More importantly, however, Defendant once again puts his entire argument into one basket; that all claims arise from his never-finalized employment agreement with Plaintiff, which Third-Party Defendant was not a party to.  Id. at p. 19.  For the purpose of brevity, Plaintiff reiterates the meticulous breakdown of the various claims contained within its initial Memorandum of Law to reiterate, including in Section I(vii), one last time, why this entire matter does not spring from the unexecuted employment agreement.   And as a result of that fact, the Equity CC are appropriately litigated in response to the first-filed French Complaint.

###### vii.    There are Readily Identifiable Exceptional Circumstances Militating in Favor of Hearing the Equity Counterclaims in Paris

It is recognized that exceptional circumstances justify the surrender of jurisdiction where they raise "considerations which are not generally present as a result of parallel litigation." Royal & Sun All. Ins. Co. of Canada, 466 F.3d at 94. "The general rule is that

9

concurrent proceedings regarding the same question are tolerated." Leopard Marine &

Trading, Ltd. v. Easy St. Ltd., 896 F.3d 174, 191 (2d Cir. 2018).

As has been argued all throughout Plaintiff's motion papers, the concurrent/

parallel proceeding taking place in the Commercial Court of Paris does not regard "the

same question." Id. Again, one involves Defendant's misappropriation of Plaintiff's

funds, while the other, filed by Third-Party Defendant only, sought a declaratory

judgment that Defendant was not entitled to an equity share in it.  Only Defendant

himself injected a consideration that was not otherwise present between the two matters;

the prospect of equity. Royal & Sun All. Ins. Co., 466 F.3d at 94.  Neither Plaintiff or

Third-Party Defendant should be penalized for Defendant's unilateral decision to try to

conflate them by endeavoring to tie Third-Party Defendant to an agreement that

Defendant never even executed with Plaintiff.  Rather, for all of the reasons discussed

herein, and in the initial Memorandum of Law, it is respectfully submitted that between

the evidential disparities, the different in focus, and the flagrant conflating of the major

issues by Defendant, exceptional circumstances exist here that militate in favor of

granting Plaintiff's motion in its entirety.

## CONCLUSION

For all of the foregoing reasons, it is again respectfully requested that the Court

issue an Order: (1) pursuant to the inherent power of the Court, to dismiss or stay

defendant/third-party plaintiff VINOD KASTURI's counterclaims based on the pendency

of a related prior pending proceeding in the Commercial Court of Paris; and (2) for such

other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 3, 2024

10

Respectfully submitted,

**MUELLER HABERMAN LAW GROUP**

/s/ Paul S. Haberman

By: _____

Paul S. Haberman (PH 2771)

11