

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000    201-489-1536  fax
—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida

Cameron A. Welch
Member
Admitted in NJ, NY and PA

Reply to New Jersey Office
Writer's Direct Line: 201.525.6209
Writer's Direct Fax: 201.678.6209
Writer's E-Mail: CWelch@coleschotz.com

February 13, 2025

**VIA ECF & EMAIL**
Hon. Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

> Re:    *Maison Kitsune, Inc. v. Kasturi*, **Case No. 1:24-cv-04431-ALC**

Dear Judge Carter:

We represent Defendant/Counterclaimant/Third-Party Plaintiff, Vinod Kasturi ("Kasturi") and hereby respond to the February 11, 2025, pre-motion letter filed by Third-Party Defendant, Kitsune Creative S.A.S., ("Kitsune Parent"). *See* ECF 31.

This action arises out of Kasturi's prior employment as the New York-based CEO of Plaintiff, Maison Kitsune, Inc., a New York corporation wholly owned and controlled by Kitsune Parent ("Kitsune America", together with Kitsune Parent, the "Kitsune Parties"). Upon receiving a draft complaint from Kasturi during settlement negotiations the Kitsune Parties commenced two preemptive lawsuits: (i) this action, seeking recovery of alleged improper "personal" expenses paid by Kitsune America; and (ii) a declaratory action in the Commercial Court of Paris seeking a decree that Kitsune Parent did not agree to provide Kasturi with equity as a condition of his employment. The allegedly improper "personal" expenses Kitsune America seeks to recover in this action are legal fees paid in connection with drafting the equity grant – legal fees incurred at the behest of Kitsune Parent's Managing Director to memorialize the grant. As such, adjudication of the Kitsune Parties' dual lawsuits will address the same question: the validity of the equity grant.

Kasturi, in turn, converted his proposed Complaint (which was always intended to be filed before this Court) into a Counterclaim and Third-Party Complaint seeking damages for: (i) the value of the equity grant he was promised, but never received; and (ii) salary and bonus payments that were improperly withheld.

Kitsune Parent now seeks leave to file a virtually identical motion to that already filed by its same counsel on behalf of Kitsune America seeking to dismiss, or stay, Kasturi's equity grant claims in favor of its preemptive French declaratory judgment action. Kitsune Parent admits as much, stating it intends to move "on appreciably similar grounds to those [Kitsune America] raised in its own motion to dismiss/stay." (*See* pre-motion letter at p. 1.) That motion is already fully


COLE SCHOTZ P.C.

Hon. Andrew L. Carter, Jr., U.S.D.J.
February 13, 2025
Page 2

briefed and before this Court. *See* ECF 20, 25, 27.  For the reasons summarized below, the arguments raised in support of dismissal, or a stay, lack merit and need not be repeated in a second round of motion practice before this Court, which will only serve to waste judicial resources and delay the prosecution of this action.

### 1.    This Court Should Retain Jurisdiction

The "Prior Pending Action Doctrine" and comity do ***not*** require this Court to surrender its jurisdiction to the Commercial Court of Paris as the Kitsune Parties contend. While this Court has the discretion to dismiss or stay an action based on the pendency of a related foreign proceeding, there is no requirement the Court exercise that discretion.  In fact, the weight of authority strongly favors this Court retaining jurisdiction.  *See Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.,* 2013 WL 2531277, at *3 (S.D.N.Y. June 10, 2013) (holding Federal courts must be mindful of their "virtually unflagging obligation ... to exercise the jurisdiction given them.").

### 2.    This New York Employment Action Belongs in New York

The Kitsune Parties recognize this Court is the proper forum to adjudicate disputes relating to Kasturi's employment and compensation, as they commenced suit here and are not seeking dismissal of Kasturi's salary and bonus related counterclaims.  The Kitsune Parties nevertheless strain to differentiate the equity grant as a 'French' matter simply because it relates to a French company.  But the fact remains the grant was promised as part of Kasturi's employment compensation with Kitsune America, and Kasturi's damage claims relating thereto are no different than the other compensation-based claims all agree belong in New York.  Simply put, this is a New York employment issue that belongs in Court in New York.  Kasturi's initial draft employment agreement, prepared by Kitsune Parent and referencing the equity grant, specifically states New York shall be the venue for all disputes.  Against that backdrop, logic dictates that ***all*** disputes arising from the employment relationship should be resolved in this New York Court.

### 3.    Kitsune Parent Should Not be Rewarded for its Anticipatory Filing

Kitsune Parent should not reap any benefit from its preemptive filing of a French declaratory judgment action.  Instead, this Court should treat the French Action as an 'anticipatory filing' under the first-filed rule. An improperly first-filed action is considered anticipatory when it is filed in response to a specific threat of litigation. *See Oleg Cassini,* 2012 WL 844284, at *5. That is exactly what happened here, as Kitsune Parent openly admits in its French Complaint. That pleading actually annexes Kasturi's draft complaint and advises the French Court its action was commenced specifically to avoid litigating Kasturi's claim in New York. *See* Exhibit C to the Declaration of Cameron Welch at p. 36, ¶ 103 (ECF 25-1). The French Action is the very embodiment of an 'anticipatory filing' and this Court should afford it no 'first filed' deference.

### 4.    Judicial Economy and Convenience Favors Retaining Jurisdiction

Judicial economy would not be served with a stay or dismissal.  Even if the Kitsune Parties' motions were granted, litigation on whether the equity grant was agreed to would continue here because Kitsune America's own affirmative claims put that matter squarely at issue.  Moreover, Kasturi now lives and works in Los Angeles.  It would be significantly more convenient for Kasturi

68201/0001-49365125

 COLE SCHOTZ P.C.

Hon. Andrew L. Carter, Jr., U.S.D.J.
February 13, 2025
Page 3

to litigate in a forum within the same country, where he would not have to incur the additional time and expense of international travel. Kasturi, an individual, has far fewer resources at his disposal than the larger Kitsune Parties – which seek to exploit their resource advantage by, irrespective of the outcome of this motion, litigating against Kasturi on two continents. It is clear that the economic disparity between Kasturi and the Kitsune Parties highly favors this forum as the most convenient for an adjudication of all claims.

Almost as an afterthought, Kitsune Parent's pre-motion letter states, in conclusory fashion, that Kitsune Parent also intends to seek dismissal for lack of personal jurisdiction because it did not avail itself of the United States in connection with Kasturi's employment, nor does it conduct business in the United States. That is patently untrue. The Counterclaim/Third-Party Complaint details, on its face, the manner in which *Kitsune Parent's* executives personally reached out to New York to recruit Kasturi. Gildas Loaec, the co-founder and CEO of Kitsune Parent, personally recruited Kasturi. *See* Third-Party Complaint [ECF 21] at ¶ 24. At that time, Kitsune Parent was actively conducting business in the United States through a distributor. Id. at ¶ 19. Kasturi then negotiated the terms of his employment, including the equity grant, directly with Kitsune Parent (specifically Mr. Loaec and Audrey Castel Oster, Kitsune Parent's Managing Director). *Id.* at ¶ 27-46. Kitsune Parent wholly owns and controls two U.S. subsidiaries formed and based in New York, Kitsune America and Café Kitsune Inc. Yet, the disclosures on Maison Kitsune's U.S. website make no mention of either U.S. entity and, instead, specifically reference Kitsune Parent. *See* Exhibit A attached hereto. Kitsune Parent's executives, including Mr. Loaec and Ms. Castel Oster, travel to the United States to conduct business. These facts confirm that, at a minimum, the question of Kitsune Parent's personal jurisdiction requires discovery before it can be properly presented in a motion. *See Vega v. Hastens Beds, Inc*., 339 F.R.D. 210 (S.D.N.Y. 2021) (holding targeted jurisdictional discovery as to foreign entities' corporate relationship to employer to determine personal jurisdiction over the entities was warranted.); *see also Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009) (noting that jurisdictional discovery, rather than dismissal, is particularly appropriate if questions remain "regarding the relationship between a parent and its subsidiary given the fact-specific nature of the inquiry into whether a subsidiary's contacts should be imputed to the parent").

Simply put, the Kitsune Parties, corporations with over $200 million in annual revenues, are attempting to wrest jurisdiction of a significant portion of Kasturi's damage claims from this Court in an attempt to force Kasturi to litigate on two continents. This is not, as the Kitsune Parties allege, an inherently 'French' matter, nor does this action encroach on French corporate law. The question at issue is whether the Kitsune Parties agreed to issue an equity grant to Kasturi as part of his employment compensation with Kitsune America. If the answer is yes, the question becomes the amount of damages Kasturi is entitled to. At no point will Kasturi become an owner of a French company. As this is simply a dispute over employee compensation, it is only logical that this Court, situated in New York, should be the forum for this dispute.

Respectfully submitted,

*/s/ Cameron A. Welch*