# EXHIBIT E



# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

J. Dudley B. Kimball
*Partner*
Tel: 212-238-3022 • 212-653-1744
Fax: 212-238-3100 • 212-653-1760
jkimball@emmetmarvin.com

January 27, 2014

Ms. Leyla Pursharifi
U.S. Brand Manager
Maison Kitsuné
52, rue de Richelieu
Paris 75001 France

Re:  Engagement for U.S. Legal Services

Dear Leyla:

We are pleased that you are considering our Firm ("EM&M") to provide certain legal services to Kitsuné Créative and certain of its related entities  (the "Client"). Consistent with the New York rules that govern a lawyer's relationship with a client, it is our firm's practice to send this engagement letter when commencing legal services.

**Clearance of Conflicts.** EM&M's representation is subject to clearance of any conflicts of interest with present or former clients of EM&M.  Based on the information that you have provided to us, EM&M has no conflicts that would prevent it from representing the Client in connection with the matters set forth in this Engagement Letter.

**Acceptance of Representation.** EM&M accepts the representation described below. This Engagement Letter (which consists of this cover letter and an attachment entitled "Emmet, Marvin & Martin, LLP Engagement and Billing Policies") sets forth (a) the scope of the services EM&M will provide; (b) a brief description of EM&M's fees, expense and billing practices; and (c) the Client's right to arbitration in the event of any fee dispute.  For your review and information, I have also attached copies of the Statement of Client's Rights and the Statement of Client's Responsibilities authorized by the Administrative Board of the New York State Unified Court System. If you have any questions about this letter or EM&M's Engagement and Billing Policies, do not hesitate to contact me.

**Scope of Services**.  You have asked us to provide advice in connection with the incorporation of two New York corporations that will be direct or indirect subsidiaries of Kitsuné Créative, a French corporation, as well as any matters of a general corporate nature that you refer to us related to the operations of the subsidiaries in the United States, including contracts of various types with other entities, such as franchise, licensing and distributorship agreements.  In addition, we will be pleased to perform such additional services as you and we may agree upon from time to time.

7101542_1.docx

EMMET, MARVIN & MARTIN, LLP
JANUARY 27, 2014                                                                                      PAGE 2 OF 10

**Staffing and Billing.** My colleague, Bob Morgan, and I will have primary responsibility for your representation. We will use other attorneys and paralegals of EM&M in the best exercise of our professional judgment. EM&M will provide legal services to the Client and bill for those services on a monthly basis. The Client will be billed for all time spent on its behalf, and all disbursements incurred for it, as set forth in the attached Engagement and Billing Practices Policies. When questions or comments arise about our services, staffing, billings, or other aspects of our representation, please contact me. It is very important to us that you are satisfied with our services and responsiveness at all times.

As a courtesy to you, we will bill you at a steeply discounted hourly rate of $375 for any attorney time (as compared, for example, to my normal hourly rate of $725 and Bob's normal hourly rate of $550) and $150 for any paralegal time spent on your matters.

We are most pleased to have this opportunity to be of service, and we very much look forward to working with you.

Sincerely yours,

J. Dudley B. Kimball

EMMET, MARVIN & MARTIN, LLP
JANUARY 27, 2014

PAGE 3 OF 10

## Client's Acceptance and Agreement

The undersigned, having read and understood the terms and conditions set forth in the Cover Letter and the attached Engagement and Billing Practices, and Statements of Clients' Rights and Clients' Responsibilities, agrees that such documents constitute the Retainer Agreement between the undersigned acting on behalf of the Client and Emmet, Marvin & Martin, LLP.

_____

Leyla Pursharifi, U.S. Brand Manager


Date Signed: _____

### Emmet, Marvin & Martin, LLP Engagement and Billing Policies

These engagement and billing policies consisting of paragraphs numbered 1 through 18 (the "Engagement and Billing Policies') are hereby attached to an accompanying Letter to be signed by a partner of Emmet, Marvin & Martin, LLP (the "Cover Letter") addressed to the party or parties identified as the client in the Cover Letter (the "Client"). The Cover Letter and these Engagement and Billing Policies together shall constitute the entire letter of engagement governing EM&M's representation of the Client (collectively, the "Engagement Letter"). Accordingly, except as expressly modified by the Cover Letter, the following provisions will, in addition to the provisions of the Cover Letter, govern the relationship between EM&M and the Client:

1. **APPLICATION OF NEW YORK RULE.** This Engagement Letter is intended to comply with Part 1215 to Title 22 of the Official Compilations of Codes, Rules and Regulations of the State of New York, entitled "Written Letters of Engagement" as such rule applies to signed written engagement letters.

2. **SERVICES TO BE CHARGED**. The Client will be charged for services that may, depending on the type of legal matter involved, include, but will not be limited to, telephone and office conferences with the Client and various counsel, witnesses, consultants, court personnel, and others; conferences among EM&M's personnel; factual investigation; legal research; responding to Client's requests to provide information to auditors in connection with reviews or audits of financial statements, attending closings, drafting of letters, preparing pleadings, briefs, and other documents; travel time; waiting time in court or elsewhere; and time in depositions and other discovery proceedings. From time to time when necessary for the Client's benefit, internal conferences will take place among EM&M's personnel, and two or more may attend meetings or proceedings on Client's behalf.

3. **FEES BASED ON TIME**. EM&M's fees will be based primarily on the amount of time spent by attorneys and paralegals on the Client's matter. Each lawyer and paralegal has an hourly billing rate. Such rate multiplied by the time spent on the Client's behalf, measured in tenths of an hour, will be evaluated by the billing attorney as the basis for determining the fee. These rates are adjusted from time to time generally to reflect increased experience and special expertise of the attorneys and paralegals and inflationary cost increases affecting EM&M's practice, and the adjusted rates will apply to all services performed thereafter. The fees and charges incurred billed are the Client's responsibility whether or not a court awards attorneys' fees against an opposing party. Courts may award attorneys' fees which they consider reasonable under the applicable statutes, but which are less than the amounts billed to you. In such cases,

the Client continues to be obligated to pay EM&M for its actual fees and charges even though the court awards less. If a monetary judgment or award is made in the Client's favor, we shall have a lien on the proceeds to the extent of any unpaid fees, disbursements, or other charges owed to EM&M.

4. **DISBURSEMENTS.** In addition to EM&M's fees, we will be entitled to payment or reimbursement for disbursements and other charges incurred in performing services including, but not limited to, messenger and delivery, air freight, extraordinary postage, computerized research, videotape recording, travel (including mileage, parking, airfare, lodging, meals, and ground transportation), long distance telephone, faxes, copying of documents (including photocopying and laser printing), word processing, court costs, process servers and filing fees. To the extent we directly provide any of these services, we reserve the right to adjust the amount we charge, at any time or from time to time, as we deem appropriate, in light of EM&M's direct costs, EM&M's estimated overhead allocable to the services, and outside competitive rates. Unless special arrangements are made, fees and expenses of others (such as local co-counsel in other jurisdictions, experts, investigators, witnesses, consultants, and court reporters) and other large disbursements will not be paid by EM&M and will be the responsibility of, and billed directly to Client.

5. **ADVANCE DEPOSIT FOR FEES AND DISBURSEMENTS.** If an advance payment toward EM&M's fees and disbursements is required by the Cover Letter in connection with EM&M's representation of the Client, such advance will be deposited in EM&M's trust account. EM&M will charge fees and disbursements against the advance and credit them on the Client's billing statements. In the event such fees and disbursements exceed the advance deposited with EM&M, the Client will be billed for the excess. Any unused portion of the advance will be returned to the Client at the conclusion of EM&M's services. The Client agrees that EM&M will have the right to request additional deposits from time to time based on estimates of future work to be undertaken. If the Client fails to timely pay any additional deposit requested, EM&M will have the right to cease performing further work and to withdraw from the representation.

6. **ESTIMATES.** Although EM&M may from time to time, for the Client's convenience, furnish estimates of fees or charges that it anticipates will be incurred on the Client's behalf, these estimates are subject to unforeseen circumstances and are by their nature inexact. EM&M will not be bound by any estimates unless expressly set forth in the attached Cover Letter or otherwise agreed to by us in writing. The actual fees may be more or less than that amount estimated depending upon the amount of time expended on the matter and other factors. If the scope of EM&M's services is

materially expanded because of unanticipated issues or complications, additional revisions to the documentation are occasioned by significant or repeated changes in the proposed transaction, or for other reasons EM&M determines that an estimate will be exceeded, EM&M will advise the Client about such situation.

7. **TIMING OF BILLING AND PAYMENT.** Unless the Cover Letter expressly provides that EM&M's fees and disbursements are to be billed and paid upon the completion of a specific transaction, fees, disbursements, and other charges will be billed periodically (either monthly or bi-monthly), and are payable upon presentation. For each such period, EM&M will furnish the Client with a statement describing EM&M's services and separately showing disbursements and other charges in a format and with such detail as the Client and EM&M may agree. There often is an unavoidable delay in reporting disbursements and other charges, and therefore not all disbursements and charges may be billed at the same time as the related legal services. Prompt payment is expected and appreciated.

8. **RESPONSIBILITIES.** In reliance upon information and guidance provided by the Client, EM&M will provide legal counsel and assistance to the Client in accordance with this Engagement Letter, keep the Client reasonably informed of progress and developments, and respond to the Client's inquiries. To enable EM&M effectively to render these services, the Client agrees to fully and accurately disclose to EM&M all facts that may be relevant to the matter or that EM&M may otherwise request, and to keep EM&M apprised of developments relating to the matter. The Client also agrees to assist and cooperate with EM&M as appropriate in dealing with the matter.

9. **CONFIDENTIAL COMMUNICATIONS.** Subject to certain exceptions, attorney-client communications are privileged and confidential. Without waiving this privilege or confidentiality, the Client hereby authorizes EM&M, in its judgment and discretion for the best interests of the Client, to communicate concerning the engagement or the Client with other parties or professionals for the benefit of the Client.

10. **EXTENT OF EM&M's REPRESENTATION.** EM&M will provide representation to Client as described in the section entitled "Scope of Services" of the Cover Letter..

11. **ADDITIONAL LEGAL SERVICES.** While this Engagement Letter is intended to deal with the specific legal services described in the section entitled "Scope of Services" of the Cover Letter, the Engagement Letter will also apply to any additional legal services that EM&M may agree to

provide that are outside the initial scope of EM&M's representation of the Client.

12. **OPINIONS ARE NOT GUARANTEES**. Either at the beginning or during the course of EM&M's representation, EM&M may express its opinions or beliefs concerning the matter or various courses of action and the results that might be anticipated. Any such statement made by any partner or employee of EM&M is intended to be an expression of opinion only, based on information available to us at the time, and must not be construed by the Client as a promise or guarantee of any particular result.

13. **WAIVER OF CONFLICTS OF INTEREST**. If there exist potential or actual conflicts of interest related to EM&M's representing of the Client, and EM&M has determined in accordance with applicable ethics rules that it is able to represent the Client if all interested parties will sign a conflicts waiver letter, then EM&M's agreement to undertake this representation is conditioned on its receipt of a conflicts waiver letter satisfactory to EM&M that has been signed by all interested parties.

14. **RIGHT TO ARBITRATION**. In the event that a dispute arises between us relating to EM&M's fees, the Client may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of New York State, a copy of which will be provided to the Client upon request.

15. **EFFECTIVE DATE.** This Engagement Letter shall become effective on and as of the date of the attached Cover Letter. When it becomes effective, the Engagement Letter covers all professional services rendered either before or after said date by EM&M within the course and scope of EM&M's representation of the Client.

16. **EM&M'S RIGHT TO WITHDRAW**. EM&M reserves the right to withdraw from its representation with the Client consent or for good cause. Good cause may include the breach of the Engagement and Billing Policies by the Client, the Client's failure to honor the terms of any agreement between the Client and EM&M, the Client's failure to pay amounts billed in a timely manner, the Client's failure to communicate or cooperate with EM&M, or follow EM&M's advice on a material matter, a substantial disagreement between EM&M and the Client, interference of Client with the efforts of EM&M, or any fact or circumstance that would, in EM&M's view, impair an effective attorney-client relationship or would render EM&M's continuing representation unlawful or unethical. If EM&M elects to do so, the Client will take all steps necessary to free EM&M of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete EM&M's withdrawal, and EM&M will be entitled to be paid for

all services rendered and disbursements and other charges made or incurred on behalf of the Client prior to the date of withdrawal.

17. **TERMINATION OF REPRESENTATION.** The engagement shall terminate when EM&M's services for the Client, as described in this Engagement Letter, have been completed and when all invoices issued by EM&M have been prepared and presented to, and paid by, the Client. The Client may terminate the engagement at any earlier time with or without cause, but all obligations to pay EM&M's invoices when presented by EM&M to the Client survive the termination of the engagement. As described above in paragraph 16, EM&M may terminate its representation of the Client and the Engagement Letter for reasons described therein. Upon any such termination of the engagement, EM&M shall promptly prepare and deliver to the Client its final billing statement, and is authorized to withdraw the amount of that final billing from the Client's advance payment deposit as set forth above in paragraph 5. If the final billing exceeds the amount of such advance payment deposit so that there is a balance due to EM&M, the Client shall promptly pay the amount of that balance due to EM&M. When EM&M's representation of the Client on the matter described in the attached Cover Letter terminates for any reason and the Client has paid to EM&M any unpaid fees and disbursements then due and payable to EM&M, EM&M shall promptly return to the Client all of the Client's funds (less any amounts due to EM&M), documents, records, or other property which may then be in the possession of EM&M.

18. **GOVERNING LAW.** This Engagement Letter is governed by, and shall be construed in accordance with, the laws of the State of New York. The conduct of EM&M and the attorneys thereof is governed by the disciplinary rules as set forth in the Judiciary Law of the State of New York.

EMMET, MARVIN & MARTIN, LLP
JANUARY 27, 2014                                                                                        PAGE 9 OF 10

## STATEMENT OF CLIENT'S RIGHTS

1. You are entitled to be treated with courtesy and consideration at all times by your lawyer and the other lawyers and personnel in your lawyer's office.

2. You are entitled to an attorney capable of handling your legal matter competently and diligently, in accordance with the highest standards of the profession. If you are not satisfied with how your matter is being handled, you have the right to withdraw from the attorney-client relationship at any time (court approval may be required in some matters and your attorney may have a claim against you for the value of services rendered to you up to the point of discharge).

3. You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest.

4. You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing. You are entitled to request and receive a written itemized bill from your attorney at reasonable intervals. You may refuse to enter into any fee arrangement that you find unsatisfactory.

5. You are entitled to have your questions and concerns addressed in a prompt manner and to have your telephone calls returned promptly.

6. You are entitled to be kept informed as to the status of your matter and to request and receive copies of papers. You are entitled to sufficient information to allow you to participate meaningfully in the development of your matter.

7. You are entitled to have your legitimate objectives respected by your attorney, including whether or not to settle your matter (court approval of a settlement is required in some matters).

8. You have the right to privacy in your dealings with your lawyer and to have your secrets and confidences preserved to the extent permitted by law.

9. You are entitled to have your attorney conduct himself or herself ethically in accordance with the Code of Professional Responsibility.

10. You may not be refused representation on the basis of race, creed, color, religion, sex, sexual orientation, age, national origin or disability.

## STATEMENT OF CLIENT'S RESPONSIBILITIES

Reciprocal trust, courtesy and respect are the hallmarks of the attorney-client relationship. Within that relationship, the client looks to the attorney for expertise, education, sound judgment, protection, advocacy and representation. These expectations can be achieved only if the client fulfills the following responsibilities:

1. The client is expected to treat the lawyer and the lawyer's staff with courtesy and consideration.

2. The client's relationship with the lawyer must be one of complete candor and the lawyer must be apprised of all facts or circumstances of the matter being handled by the lawyer even if the client believes that those facts may be detrimental to the client's cause or unflattering to the client.

3. The client must honor the fee arrangement as agreed to with the lawyer, in accordance with law.

4. All bills for services rendered which are tendered to the client pursuant to the agreed upon fee arrangement should be paid promptly.

5. The client may withdraw from the attorney-client relationship, subject to financial commitments under the agreed to fee arrangement, and, in certain circumstances, subject to court approval.

6. Although the client should expect that his or her correspondence, telephone calls and other communications will be answered within a reasonable time frame, the client should recognize that the lawyer has other clients equally demanding of the lawyer's time and attention.

7. The client should maintain contact with the lawyer, promptly notify the lawyer of any change in telephone number or address and respond promptly to a request by the lawyer for information and cooperation.

8. The client must realize that the lawyer need respect only legitimate objectives of the client and that the lawyer will not advocate or propose positions which are unprofessional or contrary to law or the Lawyer's Code of Professional Responsibility.

9. The lawyer may be unable to accept a case if the lawyer has previous professional commitments which will result in inadequate time being available for the proper representation of a new client.

10. A lawyer is under no obligation to accept a client if the lawyer determines that the cause of the client is without merit, a conflict of interest would exist or that a suitable working relationship with the client is not likely.