UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAISON KITSUNE, INC.,

                    Plaintiff,

      -against-

VINOD KASTURI,

                  Defendant.

VINOD KASTURI,

                  Counterclaimant and
                  Third-Party Plaintiff,

      -against-

MAISON KITSUNE, INC, and KITSUNE
CREATIVE SAS,

                  Counterclaim and Third-
                  Party Defendants.

Case No. 1:24-cv-04431-ALC


**MEMORANDUM OF LAW IN OPPOSITION OF
THIRD-PARTY DEFENDANT KITSUNE CREATIVE SAS'S
MOTION TO DISMISS THIRD-PARTY CLAIMS**


Randi Kochman, Esq.
Cameron Welch, Esq.
Arielle H. Wasserman, Esq.
COLE SCHOTZ P.C.
1325 Avenue of the Americas
Suite 1900
New York, NY 10019
 (212) 752-8000


*Counsel for Counterclaim and Third-Party Plaintiff Vinod Kasturi*


68201/0001-49897602

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 4

LEGAL ARGUMENT ........................................................................................................... 4

I.    KITSUNE CREATIVE'S MOTION TO DISMISS IS VIRTUALLY IDENTICAL TO KITSUNE AMERICA'S PRIOR MOTION TO DISMISS AND IS A WASTE OF THIS COURT'S AND THE PARTIES' TIME AND RESOURCES .............................................................................. 4

    A.    The Grand Declaration is Inapplicable to This Action .............................. 5

    B.    The Southern District is the Most Convenient Forum For the Parties............................................................................................................ 7

    C.    No Exceptional Circumstances that Favor Abstention Exist Here ........... 10

II.    KITSUNE PARENT HAS WAIVED ITS PERSONAL JURISDICTION DEFENSE .............................................................................................................. 12

68201/0001-49897602

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Mut. Ins. Co. v. M/V HUMACAO*,
    169 F. Supp. 2d 211 (S.D.N.Y. 2001)......................................................................................13

*City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    751 F. Supp. 3d 356 (S.D.N.Y. 2024).......................................................................................7

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
    522 F.3d 271 (2d Cir. 2008).......................................................................................................7

*Haywin Textile Prods. v. Int'l Fin. Inv.*,
    137 F.Supp.2d 431 (S.D.N.Y.2001).........................................................................................12

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982).................................................................................................................12

*Landau v. New Horizon Partners, Inc.*,
    2003 WL 22097989 (S.D.N.Y. Sept. 8, 2003).........................................................................13

*Lelchook v. Lebanese Canadian Bank*,
    2024 WL 967078 (S.D.N.Y. Mar. 6, 2024) .............................................................................13

*Marcoux v. Farm Serv. & Supplies, Inc.*,
    290 F. Supp. 2d 457 (S.D.N.Y. 2003).....................................................................................13

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston
    Metroplex, P.A.*,
    623 F.3d 440 (7th Cir. 2010) ..................................................................................................12

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    2021 WL 2403727 (S.D.N.Y. June 11, 2021) ...........................................................................5

*Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*,
    2013 WL 2531277 (S.D.N.Y. June 10, 2013) .........................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)............................................................................................... *passim*

68201/0001-49897602

**PRELIMINARY STATEMENT**

Despite the promises in its pre-motion letter to the contrary, Kitsune Parent[1] has brought a motion to dismiss Kasturi's claims in favor of its improper, preemptive declaratory action pending before the Commercial Court of Paris that is ***almost identical*** to the motion filed by Kitsune America almost six months ago. A redline comparison of the two briefs demonstrates just how duplicative Kitsune Parent's motion is – it is essentially a 'copy and paste' job relying on the same law and restating virtually all of the same arguments. Not only is this duplicative motion an affront to judicial economy, but that Kitsune Parent makes the same, flawed arguments Kitsune America raised is clear evidence that the claims and defenses of these two "Kitsune" entities are inextricably intertwined and, for all of the reasons set forth in Kasturi's opposition to Kitsune America's motion, are properly brought before this Court. (ECF # 25). In fact, so similar are the two motions that Kitsune Parent has only made three insignificant "new" arguments, all of which fail.

First, Kitsune Parent submitted the declaration of Raphael Grand (the "Grand Dec."), Kitsune Parent's Managing Director and Chief Financial Officer ("CFO"), ostensibly in support of its motion. Mr. Grand, who is not a lawyer and does not claim to have a background in law, spends the majority of his declaration making the unsupported legal argument that the Commercial Court of Paris has exclusive jurisdiction to adjudicate Kitsune Parent's shareholder disputes pursuant to the express terms of Kitsune Parent's shareholder agreements. Of course, this case is not a shareholder dispute. And Mr. Grand avers that Kasturi never signed such an agreement -- and thus never bound himself to litigate before the French Court. Rather than a shareholder dispute, this case is an employment dispute over compensation. Kasturi is not demanding an

---

[1] Unless otherwise stated, all capitalized terms have the same meaning as they do in Kasturi's Opposition to Kitsune America's Motion to Dismiss (ECF #25).

issuance of shares.  Instead, Kasturi is seeking monetary damages for the compensation he was promised in connection with his employment, which includes the value of the equity grant he was promised, but never provided.  Thus, the Grand Dec., along with its unsupported legal conclusions, have no moment and can be readily disregarded.

Second, in an attempt to avoid the reality that this Court is the proper forum for *all* of the parties' disputes, Kitsune Parent contends that Kasturi should not be rewarded for his alleged financial misappropriation by being permitted to litigate his claims here.  Yet, that argument, unsupported by any law, is circular and nonsensical.  Kitsune America commenced this action before this Court because, as it freely admitted in its opening brief six months ago, this Court is the proper forum to adjudicate matters relating to Kasturi's New York employment.  Kitsune America's preemptive filing of this action did not somehow give Kasturi the 'opportunity' to file here – Kasturi had that right all along because this Court is the appropriate forum pursuant to both the forum-of-choice provision in the Contract and New York law.  Kitsune America's decision to preemptively sue in the same forum as designated in the draft complaint Kasturi shared in connection with settlement negotiations only confirms the propriety of this venue.  Kitsune Parent's emphasis on its U.S. based subsidiary's claims of Kasturi's alleged financial misappropriation (of $175k, *which includes legal fees incurred in documenting the equity grant at Kitsune Parent's specific request*) is, in reality, a transparent attempt to depict Kasturi in a negatively false light before this Court and should be given no weight.  Furthermore, the fact that Kitsune Parent now argues Kasturi's alleged financial misappropriation prompted its filing of the French Action is the epitome of circular logic.  Kitsune America brought those claims relating to misappropriation here in New York, not in France, and thus this Court is the proper forum.  This is only further evidence that Kitsune Parent, Kitsune America, and Kasturi's claims are entirely

intertwined, arise from the same New York transactions and occurrences, and should all be adjudicated before this Court.

Third, Kitsune Parent claims that it, the international conglomerate with over $200 million in annual revenues, is actually the economically deprived underdog in this action because it chose to retain a law firm with a smaller headcount than Kasturi, the individual it paid less than 0.1% of that amount to in annual compensation before it unlawfully terminated him.  Kitsune Parent cites no law to support its illogical argument that this Court should consider the head count of the law firms retained by the parties as one of the exceptional circumstances favoring the extraordinary relief Kitsune Parent asks of this Court – that this Court relinquish its jurisdiction.  That Kitsune Parent is forced to resort to strained arguments relating to law firm headcounts in an attempt to demonstrate some hardship in litigating in this forum confirms the meritless nature of its motion.

Finally, Kitsune Parent has waived its right to assert a personal jurisdiction defense, as it has failed to move for dismissal pursuant to Fed. R. Civ. P. 12(b)(2).  It is black-letter law that personal jurisdiction must be asserted in a party's first defensive move, *i.e.*, on a motion to dismiss, or it is deemed waived. This is all the more true where: (i) Kitsune Parent explicitly stated it intended to move to dismiss on personal jurisdiction grounds in its pre-motion letters and then did not, demonstrating that such an omission was a planned, strategic choice; and (ii) Mr. Grand, the CFO of Kitsune Parent, volunteered to participate in discovery in the event that the Third-Party Claims are not dismissed on the present motion, thus conceding to the jurisdiction of this Court. Kitsune Parent has clearly communicated by its moving papers to both the parties and the Court that it intends to defend this action on the merits, and it has thus waived its defense of personal jurisdiction.

.

3

## FACTUAL BACKGROUND

Kasturi incorporates by reference his allegations in the Counterclaim and Third-Party Complaint filed by Kasturi on September 3, 2024 (ECF #14) (the "Counterclaim").

## LEGAL ARGUMENT

**I.     KITSUNE CREATIVE'S MOTION TO DISMISS IS VIRTUALLY IDENTICAL TO KITSUNE AMERICA'S PRIOR MOTION TO DISMISS AND IS A WASTE OF THIS COURT'S AND THE PARTIES' TIME AND RESOURCES**

Despite assuring the Court and Kasturi that its motion to dismiss would be more than just a retread, Kitsune Parent's motion is exactly that – nothing more than a rehash of the same arguments already made in the motion Kitsune America filed months ago. *See* Exh. A to Welch Dec. Every single paragraph in the 'Argument' section of Kitsune Parent's brief is substantively the same as Kitsune America's brief, with a few small changes. *Id.*  In spite of its protestations in its pre-motion letters, Kitsune Parent did not even try to differentiate its position in this action from Kitsune America's, and in submitting this duplicative motion, it has proven Kasturi's point that not only is this motion a waste of both the Court's and Kasturi's time and resources, but that Kitsune America and Kitsune Parent, and their claims and defenses herein, are inextricably linked for the purposes of this action. It is galling that Kitsune Parent beseeches the Court to "not summarily lump the two entities together for its consideration of the merits of each motion," (Moving Br. at fn 1) when Kitsune Parent, in bringing this duplicative motion, *is doing just that*. In the spirit of efficiency, Kasturi hereby incorporates the same arguments raised in opposition to Kitsune America's motion to dismiss – all of which confirm this Court is the proper forum for adjudication of this dispute and that this Court should not take the exceptional step of relinquishing its otherwise undisputed jurisdiction over the claims and defenses at issue here.

To avoid the same repetition of arguments Kasturi will address the three new, baseless arguments that Kitsune Parent has raised below.

### A.    The Grand Declaration is Inapplicable to This Action

The only true 'addition' to Kitsune Parent's motion is the affidavit of Raphael Grand, which Kitsune Parent has submitted in support of its contention that this matter is governed by French law. This bid fails. First, Raphel Grand is an executive of Kitsune Parent, not an attorney, and is thus wholly unqualified from offering any kind of legal opinion. *See In re Namenda Indirect Purchaser Antitrust Litig.,* 2021 WL 2403727, at \*14 (S.D.N.Y. June 11, 2021) (excluding legal opinion where non-attorney was "not qualified to offer legal opinions or to base certain ultimate conclusions on a legal opinion that differs from the law.") Indeed, Mr. Grand's lack of legal expertise is apparent, as he fails to inform this Court of the highly pertinent fact that the Commercial Court of Paris has granted Kasturi's application challenging jurisdiction prior to adjudicating the case on the merits as it otherwise would have done in the ordinary course, a clear indicator that the issue of the French Court's jurisdiction is in doubt, and not the foregone conclusion that Grand misrepresents in his declaration. *See* Rousseau Dec., ¶6.

Grand also mischaracterizes the substance of the French Action. Grand's statement that all holders of equity interests in Kitsune Parent are bound by "corporate legal documentation subjecting any such disputes to French law and to the exclusive jurisdiction of French courts" (Grand Dec., ¶8) and that "any claims of shareholders of Kitsune Creative S.A.S. against Kitsune Creative S.A.S. with regards to the underlying securities must be submitted to the Commercial Court of Paris in France" (Grand Dec., ¶9) is wholly irrelevant to the issue at hand. It is undisputed that Kasturi is not currently a shareholder of Kitsune Parent, nor is he seeking access to any "securities" or to otherwise be named a shareholder bound to such an agreement.  Rather, Kasturi is seeking ***money damages***, not equity in Kitsune Parent. It is therefore neither here nor there what

5

law the current shareholders of Kitsune Parent have agreed to be bound by – Kasturi entered into no such agreement. Rousseau Dec., ¶11. Rather, Kasturi was a then-New York based employee seeking money damages arising from his New York employment agreement, and New York is the appropriate forum for all disputes relating thereto.  That the very first employment agreement Kitsune Parent presented to Kasturi providing for the equity grant contained a New York forum selection clause only confirms the irrelevant and baseless nature of Grand's argument.

Finally, it is telling that Grand swears under the penalty of perjury that the issuance of equity to Kasturi was never brought before the Kitsune Parent shareholders. (Grand Dec., ¶¶14-16). It is undisputed that on July 5, 2016, Oster, the Managing Director of Kitsune Parent, made a written offer of compensation to Kasturi which included and equity grant in Kitsune Parent:

> **\* 0,5 [0.5%] after 1 year of activity with [Kitsune America]**
> **\*0,5 [0.5%] after 2 years of activity with [Kitsune America]**
> **\*0,5 [0.5%] after 3 years of activity with [Kitsune America]**

Kasturi Dec. at ¶7; *see also* Exh. A to Kasturi Dec. This equity grant was reflected in the draft employment agreement that Oster reviewed, and Oster and other representatives of Kitsune Parent also repeatedly acknowledged and validated the Initial Equity Grant for ***seven years*** thereafter, including during negotiations of a possible additional grant of equity in or around July 2021, and on or about October 11, 2021. *Id.* at ¶11. The fact that such equity grant was never brought before the Kitsune Parent shareholders does not support Kitsune Parent's contention that this matter belongs in front of the Paris Commercial Court, but does instead provide further proof that Kitsune Parent is either: (i) lying to this Court now; or (ii) was lying to Kasturi from the inception of their working relationship to induce him to leave his then New York employer to join the Kitsune Defendants, and that it never intended to actually issue the equity which it promised.

6

For all of the reasons set forth above, the Grand Declaration does not support this Court surrendering its jurisdiction, and should be afforded no weight.

**B.    The Southern District is the Most Convenient Forum For the Parties**

Kitsune Parent's attempt to bolster its convenience argument by slandering Kasturi fails. The inquiry into the balance of the conveniences in the prior pending action doctrine involves an analysis of factors that are substantially similar to the analysis relating to transfer of venue, such as any choice of forum clauses, convenience of witnesses and parties, location of relevant documents, relative means of the parties, etc. *See Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.,* 522 F.3d 271, 275 (2d Cir. 2008). As discussed in Kasturi's opposition brief to Kitsune America's motion to dismiss, these factors support a finding that the Southern District is the most convenient forum for the parties. *See* Kasturi Opp. Br. at p. 16-18 (ECF #25).

In a transparent attempt to avoid litigation in the Southern District, Kitsune Parent now baselessly claims that Kasturi's alleged misdeeds are the only reason that this action is in the Southern District, and that this is somehow a basis for claiming that the Commercial Court of Paris is a more convenient forum. This is both false and nonsensical. First, even if Kitsune Parent's contentions over misappropriation were correct (and they are not), who is to blame for the litigation does not change the fact that the Southern District is a more convenient forum for both Kasturi and the Kitsune Parties. *See Id.; see also City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 751 F. Supp. 3d 356, 374 (S.D.N.Y. 2024) (in assessing private factors of convenience, weighing "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive[,]" ***not the impetus for the action***)

7

(emphasis added). Kasturi does not "alone *feel*[]" that the Southern District is a more convenient forum – Kasturi has ***demonstrated***, by law and fact, that the Southern District is a more convenient forum. Moving Br. at p. 21 (emphasis added). Kitsune Parent's argument rings hollow because even if it and Kitsune America's duplicative motions were granted, Kitsune America's claims and many of Kasturi's Counterclaims would still remain pending before this Court. Granting this motion will not bring an end to the dual litigations the Kitsune Parties preemptively commenced.

Second, Kitsune America's choice to preemptively file its spurious claims in the Southern District before Kasturi had the chance to file the Counterclaims and Third-Party Claims did not give Kasturi the "opportunity" to file in this venue. *Id.* Kasturi had the "opportunity" to file his Third-Party Claims in the Southern District because that is the appropriate forum pursuant to both the forum-of-choice provision in the Contract and New York law. When Kasturi's counsel sent Kitsune Defendants a draft complaint, it clearly indicated that Kasturi would be moving in this very forum regarding his claims relating to his salary, equity grants, and promised bonuses (*see* Exh. C to November Welch Dec.[2]). The fact that Kitsune America also chose to file in the Southern District when it brought its action relating to Kasturi's employment is only further proof that this is the most appropriate and convenient forum for the adjudication of these issues. Indeed, all of the parties have clearly indicated that all claims relating to Kasturi's employment compensation belong here, and Kasturi's claims against Kitsune Parent to receive monetary damages for the equity that it promised him as part and parcel of his employment compensation are exactly that.

---

[2] "November Welch Dec." refers to the Declaration of Cameron A. Welch filed on November 21, 2024 (ECF #25-1).

68201/0001-49897602

Finally, Kitsune Parent's accusations of "unclean hands" are false, slanderous, and unsupported by the record – and, critically for purposes of this motion, have no bearing on the convenience of the parties. Kasturi has clearly stated that the alleged financial misappropriation did not occur; indeed, all of the subject misappropriated expenditures were explicitly approved by Kitsune Parent, which Kitsune Parent does not refute here. *See* Third-Party Compl., ¶ 69. These allegations should thus be seen as exactly what they are – Kitsune Parent's attempt to prejudice Kasturi in the eyes of this Court. Furthermore, to the extent that Kitsune Parent relies on Kasturi's alleged financial misappropriation to constitute an 'exceptional' circumstance, such reliance is misplaced. Kasturi's alleged financial misappropriation is not the subject of the French Action and thus cannot serve as the reason that suit was brought in Paris. Kitsune Parent has thus failed to demonstrate how, exactly, Kasturi's alleged misdeeds properly resulted in two separate actions being required on two continents, or why Kasturi should be penalized for being the subject of a corporate witch hunt launched because the Kitsune Parties' believed the best defense to his affirmative claims for millions of dollars in past due compensation was, to quote the old adage, a "good offense."

Kitsune Parent's efforts to associate Kasturi's alleged financial misappropriation to the French Action further belies its contention that the actions and claims are separate and can be adjudicated independently in two different courts on two different continents. Notably, the alleged financial misappropriation and the subject equity grant have always been linked, as some of the roughly $175,000 the Kitsune Parties contend Kasturi misappropriated was actually expended on legal expenses incurred drafting the documents memorializing the equity grant at the request of Kitsune Parent (specifically Oster). Thus, litigating the misappropriation claims Kitsune America commenced here will, by necessity, require adjudication of whether Kitsune Parent promised the

9

equity grant in the first instance.  The fact that Kitsune Parent is now also using Kasturi's alleged financial misappropriation to justify its filing in the French Action only further confirms that the claims it is currently arguing before the Commercial Court of Paris must be heard before this Court, as this Court is where Kitsune America has brought its financial misappropriation causes of action. Simply put, Kitsune Parent, Kitsune America, and Kasturi's claims are entirely intertwined, cannot practicably be separated, and are all properly before this Court.

**C.    No Exceptional Circumstances that Favor Abstention Exist Here**

There are no exceptional circumstances that favor abstention here. While this Court has the discretionary power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction, the Second Circuit has held that "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification ***for*** the exercise of jurisdiction, ***but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction***." *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.,* 2013 WL 2531277, at *3 (S.D.N.Y. June 10, 2013) *citing Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (emphasis supplied). Absent any 'exceptional circumstances,' this Court should maintain its jurisdiction. That is exactly the case here – no such 'exceptional circumstances' exist. *See* Kasturi Opp. Br. at p.4-7. Kitsune Parent raises exactly one new argument in support of its 'exceptional circumstances' claim: that because Kasturi, the employee who is being accused of misappropriating the sum total of $175,831.58 (Compl., ¶26) and who is being sued by Kitsune Entities in two different jurisdictions, hired a law firm with a larger head count, he is the Goliath here.  At the same time Kitsune Parent, an international conglomerate that based on its own press releases made over $200 million in annual revenue in 2024 (*see* https://www.lesechos.fr/industrie-services/conso-distribution/bali-paris-japon-la-griffe-

10

de-mode-kitsune-demultiplie-ses-cafes-2102639), and which is the aggressor in both actions, contends it is the proverbial David simply because it hired a smaller law firm. This is patently absurd. It is axiomatic that the size of a law firm is not determinative of the quality or caliber of their attorneys, and Kitsune Parent is certainly represented by competent counsel. By way of example, in his biography, Paul Haberman, defendant's lead counsel, describes himself as:

> An accomplished legal writer and lecturer, Paul has ***extensive experience*** representing individuals, companies, and institutions in the sports, entertainment, health, hospitality, retail, consumer, real estate, and other industries in both federal and state courts, ***where he has secured scores of victories in dispositive motion practice and a range of favorable outcomes on trial, on appeal, and through negotiation***. He provides clients dedicated, individualized service to meet their needs.
>
> \*\*\*
>
> Paul was selected by Super Lawyers for the 2014, 2015, and 2016 "New York Metro Area Rising Stars" list and the 2017 and 2018 "New Jersey Rising Stars" list. Each year, no more than 2.5% of the attorneys in New York or New Jersey are selected by the research team at Super Lawyers to receive that honor. He also receives an "excellent" rating on Avvo.

*See* https://paulhabermanlaw.com/about-2/ (emphasis added). It is clear that Kitsune Parent's counsel is experienced and accomplished. This argument goes nowhere.

Kitsune Parent's attempts to distance itself from Kasturi and its own operations in the United States are also unavailing. It is dishonest for Kitsune Parent to paint itself as a stranger to Kasturi's employment relationship here when it is undisputed that: (i) Gildas Loaec, the co-founder and CEO of ***Kitsune Parent***, personally recruited Kasturi to join Kitsune America. *See* Third-Party Complaint [ECF 21] at ¶ 24; *see also* Kasturi Dec. at ¶¶2-4, Exh. A to Kasturi Dec.; (ii) Kasturi negotiated his salary, equity grant, and other employment and compensation terms with Oster, the then-Managing Director of Kitsune Parent. *See* Third-Party Complaint [ECF 21] at ¶¶ 27-38; *see also* Kasturi Dec. at ¶¶ 5-11, Exh. A to Kasturi Dec.; and (iii) Kasturi reported to and worked with

11

Loaec, Oster and others at Kitsune Parent. *See* Third-Party Complaint [ECF 21] at ¶51; *see also* Kasturi Dec. at ¶13, Exh. D to Kasturi Dec. Kitsune Parent is the entity that recruited and hired Kasturi, and its attempts to manufacture distance in order to avoid litigating the New York employment contract that arose from same in the appropriate forum should not be countenanced by this Court.

**II.    KITSUNE PARENT HAS WAIVED ITS PERSONAL JURISDICTION DEFENSE**

Despite telling this Court and Kasturi in its premotion letter that it intended to move pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss on the grounds of personal jurisdiction, Kitsune Parent failed to so move, or make any argument regarding personal jurisdiction in its moving brief, outside of a throwaway, one-sentence mention in the preliminary statement. *See* Moving Br. at p. 2.  By failing to argue any personal jurisdiction defense in its motion, Kitsune Parent has waived its right to assert same. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Personal jurisdiction must be asserted in a party's first defensive move, *i.e.*, on a motion to dismiss, or it is deemed waived. *See e.g.  Haywin Textile Prods. v. Int'l Fin. Inv.,* 137 F.Supp.2d 431, 434 n. 2 (S.D.N.Y.2001) ("'[A] defendant who wishes to raise the defense of no personal jurisdiction ... *must do so in its first defensive move, be it a Rule 12 motion or an answer.*'") (citing *Hartling v. Woodloch Pines, Inc.,* 97 Civ. 2587(JSM), 1998 WL 575138, at *1 (S.D.N.Y. Sept. 8, 1998) (emphasis added). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.,* 623 F.3d 440, 443 (7th Cir. 2010).

12

That is exactly the case here, as: (i) Kitsune Parent stated in its pre-motion letters that it "intend[s] to move … on the ground of lack of personal jurisdiction over the same[,]" (ECF #31) and that "[Kitsune Parent] has … a rather strong argument that it can/will make based upon lack of personal jurisdiction" (ECF #33) but then Kitsune Parent failed to so move; and (ii) Grand, Kitsune Parent's CFO, averred in his declaration that he would participate in discovery, including sitting for a deposition, in this action in the event the Third-Party Claims are not dismissed (*see* Grand Dec., ¶26), thus consenting to the jurisdiction of this Court. As such, Kitsune Parent has clearly communicated to the parties and the Court that it intends to defend this action on the merits here, and it has thus waived its defense of personal jurisdiction. *See Lelchook v. Lebanese Canadian Bank*, 2024 WL 967078 (S.D.N.Y. Mar. 6, 2024) (holding that party had waived defense of personal jurisdiction where it had failed to assert it in its motion to dismiss, but clearly contemplated the defense in a pre-motion stipulation, thus rendering the "***omission [] a deliberate, strategic choice to forgo a Rule 12(b)(2) defense.***"); *see also Atl. Mut. Ins. Co. v. M/V HUMACAO*, 169 F. Supp. 2d 211, 215 (S.D.N.Y. 2001) ("It has long been settled that parties waive objections to personal jurisdiction if they agree to submit to the jurisdiction of a particular court.").

To the extent Kitsune Parent would attempt to first raise its personal jurisdiction arguments in reply, it is forbidden from doing so. *See Marcoux v. Farm Serv. & Supplies, Inc*., 290 F. Supp. 2d 457 (S.D.N.Y. 2003) (holding that arguments may not be raised for first time in reply brief as that tactic denies opponent opportunity to respond); *see also Landau v. New Horizon Partners, Inc.,* 2003 WL 22097989, at *10 (S.D.N.Y. Sept. 8, 2003) ("This argument was raised for the first time in Spar2000's reply papers and may not be considered for the purposes of this motion because

the plaintiff had no opportunity to respond to such arguments, and in any event, full consideration and development of this issue requires that the argument be raised in the original moving papers.")

## CONCLUSION

Kitsune Parent, like Kitsune America, has utterly failed to demonstrate the requisite exceptional circumstances for this Court to surrender its jurisdiction in favor of piecemeal litigation of related and overlapping claims on two continents.  It is undisputed this Court has jurisdiction over all aspects of this New York employment dispute.  It is respectfully submitted that this Court should retain its jurisdiction and deny Kitsune Parent's duplicative motion in its entirety.

Dated: May 2, 2025
       New York, NY

/s/ Cameron Welch
Randi Kochman, Esq.
Cameron Welch, Esq.
Arielle H. Wasserman, Esq.
COLE SCHOTZ P.C.
1325 Avenue of the Americas
Suite 1900
New York, NY 10019
(212) 752-8000


*Counsel for Counterclaim and Third-Party
Plaintiff Vinod Kasturi*

14

68201/0001-49897602