UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MAISON KITSUNE, INC.,

                                        Docket No. 24-cv-04431 (ALC)

            Plaintiff,

            v.

VINOD KASTURI,
            Defendant.
-----------------------------------------------------------------x

VINOD KASTURI,

            Counterclaimant and
            Third-Party Plaintiff,

            v.

MAISON KITSUNE, INC. and KITSUNE
CREATIVE SAS,

            Counterclaim and
            Third-Party Defendants.

-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THIRD-PARTY
DEFENDANT KITSUNE CREATIVE S.A.S.'S MOTION TO DISMISS THIRD-PARTY
<u>COMPLAINT</u>**

Of Counsel:

Paul S. Haberman
Mueller Haberman Law Group
19 Engle Street, Tenafly, New Jersey 07670
88 Pine Street, 22nd Floor, New York, New York 10005
phaberman@muellerfirm.com: Email
(201) 567-4969: Phone

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………..iii

PRELIMINARY STATEMENT……………………………………………………………….1

LEGAL ARGUMENT…………………………………………………………………….....2

      I.       DEFENDANT'S ARGUMENT THAT THE MOTION TO DISMISS IS
             VIRTUALLY IDENTICAL TO PLAINTIFF'S PRIOR MOTION IS
             NOTHING MORE THAN A FURTHER ATTEMPT TO CONFLATE
             THE TWO ENTITIES FOR HIS OWN BENEFIT……………………………….2

      II.     THE THIRD-PARTY CLAIMS SHOULD BE DISMISSED PURSUANT TO
             THE PRINCIPLES OF INTERNATIONAL COMITY AND THE
             "PRIOR ACTION PENDING" DOCTRINE………………………………..7

      III.    THIRD-PARTY DEFENDANT DOES NOT DISPUTE PERSONAL
             JURISDICTION BUT RATHER THE COURT'S JURISDICTION
             BASED ON THE PRIOR ACTION PENDING DOCTRINE…………………..10

CONCLUSION…………………………………………………………………………..10

## TABLE OF AUTHORITIES

**Cases**

Ole Media Management, L.P. v. EMI April Music, Inc.,
2013 WL 2531277 (S.D.N.Y. June 10, 2013)…………………………………….................7

**Statutes and Other Authorities**

**PRELIMINARY STATEMENT**

The opposition filed by defendant VINOD KASTURI ("Defendant") does little more than air out distracting, disingenuous grievances and further attempt to misleadingly conflate plaintiff MAISON KITSUNE, INC. (the "Plaintiff") and third-party defendant KITSUNE CREATIVE S.A.S. (the "Third-Party Defendant").  No matter how appalled Defendant believes the Court should be based upon Third-Party Defendant's initial motion papers, absolutely nothing changes the fact that the Equity TPC, as that term is defined in the initial motion papers (D.E. No. 26-6), create a full panoply of unrelated issues and litigation demands upon the instant lawsuit which serve little purpose in this Court other than to obfuscate the claims by Plaintiff that Defendant repeatedly misused, or otherwise misappropriated, Plaintiff's funds prior to his termination.  And at the same time, it is the dispute that arose between Third-Party Defendant and Defendant as to the existence of Defendant's purported incentive plan which gave rise to the French Complaint.  It thus bears repeating that the Equity TPC are both (i) entirely unrelated to the issues which are being put for adjudication by Plaintiff in the present proceedings; and (ii) entirely duplicative of the issues that have already been put for adjudication by Third-Party Defendant in the proceedings already commenced and pending before the Commercial Court of Paris. Nothing changes either that reality or the fact that, despite Defendant's ceaseless harping on the fact that Plaintiff and Third-Party Defendant's motions are substantially similar, they remain legally different entities that are fully entitled to put forth and preserve their own individual arguments, claims, and defenses whether or not they have the same counsel, just as different companies and parties in virtually every lawsuit ever filed that may have similar concerns with an opposing party

1

are entitled to.  To put it another way, it is respectfully requested that, upon review of the sum of all motion papers in this matter, the Court see through Defendant's whinnying about the similarity of the motions, review the respective motions with an eye on the differences between Plaintiff and Third-Party Defendant, and not just be drawn in by Defendant's unbridled efforts to conflate the two entities for his advantage in a case which, once again, is filed exclusively because of his misdeeds.

## LEGAL ARGUMENT

I. **DEFENDANT'S ARGUMENT THAT THE MOTION TO DISMISS IS VIRTUALLY IDENTICAL TO PLAINTIFF'S PRIOR MOTION IS NOTHING MORE THAN A FURTHER ATTEMPT TO CONFLATE THE TWO ENTITIES FOR HIS OWN BENEFIT**

Defendant spent a good amount of ink in his opposition playing victim and accusing Plaintiff and Third-Party Defendant of wasting the Court's time and the Parties' time and resources by filing a motion substantially similar to the one by Plaintiff that is already pending before the Court.  It thus bears repeating, as originally noted in the initial Memorandum of Law, D.E. No. 36-6 at p. 3, footnote 1, that the focus of this motion is different because it is Third-Party Defendant, a French entity, that is making this motion, not Plaintiff, the U.S.-based legal entity that actually employed Defendant. Third-Party Defendant therefore respectfully requests again that, to the extent that the motions are not reviewed separately, the Court be cognizant that Third-Party Defendant, unlike Plaintiff, is not a U.S.-based entity and did not initiate a proceeding before this Court, and thus that it does not summarily lump the two entities together for its consideration of the merits of each motion.  Such a scenario would, again, only feed into Defendant's efforts to confuse and conflate the otherwise distinct and discrete issues raised by the two entities and their respective motions.

Aside from Defendant's naked attempts to win the two motions on the basis of confusion and conflation, he also attempts to summarily declare, through his French counsel, that Raphael Grand, an executive of Third-Party Defendant, is somehow unqualified to speak on the differences between the matter pending in the Commercial Court of Paris, which his entity is directed involved with, and the instant case, which it is not, if one actually stuck to the issues in the instant case, namely Defendant's misappropriation of Plaintiff's money prior to the termination of his employment.  One particularly interesting point that is raised in opposition to Mr. Grand's submission is that he is "*not an attorney, and is thus wholly unqualified from offering any kind of legal opinion*" on the French matter. D.E. No. 42 at p. 5.  The question is thus begged as to who, if any, of us who are involved in the instant case are qualified to speak on French law, and the answer is: none of us. Neither the Parties' counsel here nor the Court is admitted to practice law in France and interpret its laws and regulations. And that is exactly Third-Party Defendant's point.  It has a dispute that finds its origins in French law and within the specific corporate paperwork of its French company and is litigating against Defendant in France accordingly.

In any event, to alleviate the various purported concerns raised by Defendant as to Mr. Grand's submission and its legal observations, Third-Party Defendant has attached a responsive declaration from Alexandre Meyniel, Esq. (the "Meyniel Declaration"), Third-Party Defendant's counsel on the matter pending in the Commercial Court of Paris. Within his Declaration, Mr. Meyniel readily controverts a lot of the assertions made by Defendant's French counsel, Phillippe Rousseau, and, by extension Defendant himself as well.  Mr. Meyniel begins by noting that "*several assertions made in the Rousseau*

3

*Declaration ...are incorrect or misleading."* <u>Meyniel Declaration</u> at ¶ 2.  Importantly,

Mr. Meyniel notes that the assertion that:

>  Mr. Grand's declaration notably omits that the Commercial Court of Paris has
> agreed to address the questions of competence and jurisdiction raised in
> [Rousseau's] December 17, 2024 pleadings before moving on the merits of
> [Third-Party Defendant's] claims, a step the Commercial Court was not required
> to take. Rather, the Commercial Court of Paris could have refused to hear the
> issues of jurisdiction on an accelerated basis prior to the adjudication of the merits
> of the dispute and decided all issues at once[,]

is "*both incorrect and misleading.*"  <u>Id</u>. at ¶ 3. Mr. Meyniel cites several reasons for this

which, per page limitations, Third-Party Defendant simply incorporates by reference.

Importantly, however, Mr. Meyniel notes that:

>  [f]irst, [the above-excerpted statement] is incorrect because the Commercial
> Court "has [not] agreed" to anything with respect to the manner in which
> Defendant's jurisdictional objections would be administered.  And the
> Commercial Court has not issued a single decision or procedural order to that end.
> The only reason why the adjudication of the jurisdictional objections have been
> bifurcated is because (i) Defendant only submitted jurisdictional objections in his
> December 18, 2024 submissions (without raising any defenses on the merits of
> Kitsune Creative's substantive claims), and (ii) Kitsune Creative did not request
> for the proceedings to move forward on both the jurisdictional objections and
> substantive claims—thereby accepting that the jurisdictional objections be heard
> first.

<u>Id</u>. at ¶ 5.

He thus notes that what the Commercial Court of Paris did "*has therefore little to*

*do with the Commercial Court's views on the case or the intrinsic merits of the objections*

*or the claims.*"  <u>Id</u>. at ¶ 6.  Mr. Meyniel goes on to further meticulously eviscerate Mr.

Rousseau's assertions throughout the balance of his Declaration.  <u>Id</u>. at ¶¶ 8-21.

It is further interesting to note that Defendant concedes that *"[i]t is undisputed*

*that [Defendant] is not currently a shareholder in [Third-Party Defendant], nor is he*

*seeking access to any 'securities' or to otherwise be named a shareholder bound to such*

4

*an agreement.*" <u>D.E</u>. No. 42 at p. 5.  If that is Defendant's position, it makes no sense to include Third-Party Defendant in this action as at all. Third-Party Defendant does not owe anything to Defendant.

Finally, it is worth noting that Defendant's own words are inconsistent on this topic.  Defendant asserts that *"[r]ather than a shareholder dispute, this case is an employment dispute over compensation.*"  <u>D.E</u>. No. 42 at p. 1.  If the dispute concerns an employment agreement and the compensation arising from same, the question is begged as to why the Court would not keep this matter solely between Defendant and Plaintiff, with whom he had an employment relationship.  If Defendant is not claiming, and cannot claim, to have a dispute with Third-Party Defendant as to his employment, it is not apparent why it is being hauled before this Court.  Despite this concession that it is an employment-related dispute, however, Defendant also states that this Court is the proper forum "*to adjudicate matters relating to [Defendant's] New York employment.*"  <u>Id</u>. at p. 2.  To recap, Defendant was employed in New York by Plaintiff, not by Third-Party Defendant. By ceaselessly trying to include Third-Party Defendant in this litigation, Defendant proves that he intends to claim shares in it since it is unquestionable that Third-Party Defendant was never Defendant's employer.

To clear up the various corporate relationships, Third-Party Defendant annexes the Declaration of Gildas Loaec (the "Loaec Declaration") hereto. Mr. Loaec is the Vice President and sole Director of Plaintiff.  <u>Loaec Declaration</u> at ¶ 1.  Contrary to the factually baseless assertions as to corporate structure made by Defendant in his submission in opposition to this motion, Mr. Loaec confirms that:

A.  Third-Party Defendant is <u>not</u> the parent company of Plaintiff. It is a holding entity which does not conduct any operational business. Third-Party Defendant is the parent of non-party Kitsune France S.A.S. which, in turn, is the parent company of Plaintiff.

B.  Audrey Castel Oster is not legally registered in the Registre du Commerce et des Sociétés as the *Directrice Générale* (Managing Director) of Third-Party Defendant and, at all relevant times, never was. Rather, Ms. Oster was the registered *Directrice Générale* of non-party Kitsune France S.A.S. between February 2020 and June 2023, and always acted under Mr. Loaec's supervision and control, as he is an officer of Plaintiff.

C.  The draft of the 2016 employment agreement that Defendant produced in Exhibit C of his declaration does not state in Article 13.4 that Third-Party Defendant is the notice party, but rather that "*Audrey Castel Oster [of] Kitsune France,*" is the notice party. At the same time, Plaintiff omits to state in his declaration that the name "Gildas Loaec" appears as Vice-President of Plaintiff in the signature page of the draft employment agreement; and

D.  That as C.E.O. of Plaintiff, Defendant reported to Mr. Loaec as Vice-President and Sole Director of Plaintiff. <u>Id</u>. at ¶ 6(a)-(e).

The Loaec Declaration should close the door on the strangely uninformed claims of Defendant on the topic who was involved with what as to his employment and the flimsy bases for claiming Southern District of New York is the appropriate venue for litigating against Third-Party Defendant.

6

For all of the foregoing reasons, as well as those discussed at length in the initial Memorandum of Law, the instant motion should be granted in its entirety.

## II.    THE THIRD-PARTY CLAIMS SHOULD BE DISMISSED PURSUANT TO THE PRINCIPLES OF INTERNATIONAL COMITY AND THE "PRIOR ACTION PENDING" DOCTRINE

Interestingly, Defendant only disputes two (2) of the eight (8) reasons proffered by Third-Party Defendant for why the third-party claims should be dismissed pursuant to the principles of comity and the "prior action pending" doctrine. See, Ole Media Management, L.P. v. EMI April Music, Inc., 2013 WL 2531277, *3 (S.D.N.Y. June 10, 2013) (internal citation omitted).  While Defendant may have chosen to do this in furtherance of his claim that the motions are substantially similar and thus a waste of everyone's time, it should instead be seen as a tacit concession that Third-Party Defendant, given its decidedly and demonstrably different positioning in this case than Plaintiff, should be dismissed from this matter and allowed to continue litigating with Defendant exclusively in the Commercial Court of Paris, where its grievances are separate and distinct from Plaintiff's grievances. In any event, Defendant first argues that the Southern District of New York is the most convenient forum for the Parties. D.E. No. 42 at p. 7.  In doing so, Defendant again tries to conflate the two pending litigations by stating that "*[g]ranting this motion will not bring an end to the dual litigations the [two separate legal entities that are Plaintiff and Third-Party Defendant] preemptively commenced.*"  Id. at p. 8.  This point is wholly irrelevant to the inquiry. Defendant remains in denial that his actions alone have provoked two separate legal entities to litigate two separate types of issues in the two separate venues.

7

Secondly, Defendant employs nothing more than pre-discovery, self-serving *ipse dixit* in support of his claim that this Court is most convenient for Third-Party Defendant's claims when he states that Plaintiff's "*choice to preemptively file its spurious claims in the Southern District before [he] had the chance to file the Counterclaims and Third-Party Claims did not give [him] the 'opportunity' to file this venue.*" Id. at p. 8. Whether or not the claims are "spurious" is simply not at issue in the instant motion and has no bearing on what forum is more convenient. Defendant would need to support such claims with far more than *ipse dixit* that has not yet been subject to depositions yet anyway. What is at issue is that Defendant is attempting to compel Third-Party Defendant, a French entity, to litigate issues in the Southern District of New York that have no business here when, for the reasons discussed at length Section I(vi) of the initial Memorandum of Law (D.E. No. 36-6), the Commercial Court of Paris is a similarly convenient venue to the Southern District of New York and the far more appropriate one for what is at issue between Defendant and Third-Party Defendant only. This fact does not change because the equity conversation ceased after he was terminated by Plaintiff for misappropriation of funds. Id. at pp. 9-10. One entity Defendant was trying to claim an equity interest in even though it was not his employer; the other was his employer until it was discovered he was using their funds as his personal piggybank.

Defendant next purports that there are no exceptional circumstances that favor abstention. Id. at p. 10. For all of the reasons discussed at length in Section I(viii) of the initial Memorandum of Law (D.E. No. 36-6), Defendant's position has no basis in reality. Of note, Defendant first pretends to take exception to the idea that just because he has the larger law firm on his side does not mean that he can afford to litigate on two continents.

8

Id. a p. 10-11. While Third-Party Defendant's counsel is flattered by the back-handed praise he receives from Defendant in making this argument, the Court can likely be assured that the rates of virtually all of the attorneys representing him are palpably higher, or at least similar, regardless of how many years any of them have been practicing law. This, however, should be largely disregarded in the Court's consideration of this motion, as its suggestion in the initial motion papers was more of a throwaway remark in response to suggestions made by Defendant in prior court filings than a standalone reason for why exceptional circumstances favoring abstention exist here.

Defendant also attempts, one further time, to conflate Plaintiff and Third-Party Defendant by accusing Third-Party Defendant of attempting to "distance itself" from Defendant "*and its own operations in the United States[.]*" Id. at p. 11. And again, for all of the reasons discussed in Section I(viii), as well as the initial Memorandum of Law as a whole, such unabashed conflation should be given no consideration by the Court in its consideration of Third-Party Defendant's motion.  No matter how Defendant tries to package it, a New York-venued employment agreement featuring Third-Party Defendant as a signatory will simply never surface in this case, as it does not exist.  What does exist is an unsigned employment agreement with a signature line for Gildas Loaec, who is an officer of Plaintiff.  Loaec Declaration at ¶ 6(d).

For all of the foregoing reasons, as well as those discussed at length in the initial motion papers, Third-Party Defendant's motion should be granted in its entirety.

### III.    THIRD-PARTY DEFENDANT DOES NOT DISPUTE PERSONAL JURISDICTION BUT RATHER THE COURT'S JURISDICTION BASED UPON THE PRIOR ACTION PENDING DOCTRINE

Defendant spends the last three (3) pages or so of its opposition papers making a point that Third-Party Defendant does not dispute; that by not arguing that the Court lacks personal jurisdiction over it in the instant motion, it has waived the argument. D.E. No. 42 at pp. 12-14. Third-Party Defendant is not disputing that the Court has personal jurisdiction over it despite its earlier intentions.  It will not get in the weeds with Defendant to elaborate any further on why it did not become part of the instant motion. However, it is worth noting that the instant motion unquestionably reflects Third-Party Defendant's position that the Court does not have primary jurisdiction based upon the "primary action pending" doctrine, as discussed at length in the initial motion papers, as well as in Section II, above.  It should come as no surprise to the Court that Defendant raised this topic, given that it is consistent with his theme of incessant conflation. Personal jurisdiction is separate and distinct from whether the Equity TPC should be adjudicated before this Court when Third-Party Defendant filed the French Action on the same facts and legal issues several months earlier.

### CONCLUSION

For all of the foregoing reasons, as well as those discussed at length in the initial motion papers, it is again respectfully requested that the Court issue an Order: (1) pursuant to the inherent power of the Court, dismissing or staying defendant/third-party plaintiff VINOD KASTURI's third-party claims against KITSUNE CREATIVE SAS based on the pendency of a related prior pending proceeding in the Commercial Court of Paris; and (2) for such other and further relief as this Court deems just and proper.

10

Dated: New York, New York
       May 23, 2025

                         Respectfully submitted,

                         **MUELLER HABERMAN LAW GROUP**

                         /s/ Paul S. Haberman

By:           _____

                         Paul S. Haberman (PH 2771)

11